Argued 11 January, decided 13 February, 1906.

### DICKEY v. JACKSON.

84 Pac. 701.

COMPROMISE AND SETTLEMENT—SUFFICIENCY OF CONSIDERATION.

1. A settlement of claims or demands urged in good faith, even though of doubtful validity, is made on a sufficient consideration.

DURESS.

2. The evidence here is convincing that the compromise and settlement in question was made voluntarily and not under duress.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit by J. E. Dickey against G. W. Jackson on a written contract to obtain a judgment against the defendant Jackson for $10,400, and to foreclose a lien on a

certificate of deposit for $20,000, issued by the defendants Ladd & Tilton to Jackson, and by him pledged to the plaintiff as security for the payment of the above-named amount. The facts in brief are these : For some years prior to 1899, the plaintiff and defendant had been living together in Portland as husband and wife, without the formality of a marriage. During that time they had accumulated considerable property, the title to which was in the defendant, but to which the plaintiff made some claim. In the spring of 1899, the defendant went to Manila to engage in business, and soon after his arrival purchased an interest in a hotel or restaurant and saloon combined, and a few weeks later bought out his partner, and obtained title to the entire business. The plaintiff thereafter joined him at Manila and immediately took charge of and looked after the hotel or restaurant part of the business, and the defendant devoted his attention to the saloon department. They thus continued the business until June, 1901, when they sold out, and returned to Portland, bringing with them $2,000 in cash received as part of the purchase price and $20,000, profits derived from the business during the time it was conducted by them. Before leaving Manila, the money was divided into two parts, each of the parties having custody of one part during the voyage home. Upon their arrival in Portland they went to the banking house of Ladd & Tilton and deposited the money, receiving a certificate of deposit therefor in the name of the defendant. They thereafter continued to live together as before until some time in 1903, when the plaintiff again went to Manila. After she had been there for some time, she wrote to the defendant for money with which to make some investments, but, being unable to obtain it, returned to Portland about the 1st of May, 1904, and demanded a settlement of their business affairs, claiming to have been a partner in the hotel and saloon business in Manila, and entitled to one-

half the profits thereof, and also to have causes of action against him for breach of promise to marry and for seduction.

As the plaintiff was unable to reach a satisfactory settlement, she placed the matter in the hands of Judge Northup, who, after considerable negotiation with the defendant, finally obtained a compromise by which the latter agreed to assign and transfer to the plaintiff one-half the sum of $20,000, with interest thereon, as represented by a certificate of deposit issued by the defendants Ladd & Tilton in his favor for that amount, dated November 3, 1903, payable one year after date, and bearing interest at 4 per cent; and, to secure the payment of the same, the certificate was assigned and transferred to her. In consideration of such settlement the plaintiff was to release and satisfy all claims of whatsoever nature she had against him, including all matters arising out of their alleged partnership. The contract was reduced to writing, signed by the parties, and complied with by plaintiff, but when the certificate matured, defendant refused to indorse the same so that plaintiff could collect her half of it, or to pay the money; and hence this suit.

The complaint sets out the contract in full, alleges its execution under seal, the compliance therewith by the plaintiff, the breach thereof by the defendant, and prays for a decree against him for $10,400 for the sale of the certificate of deposit, and for the application of the proceeds thereof to the payment of such sum, and of the costs and disbursements of the suit. The answer admits the making of the contract, but denies that there was any consideration therefor, and avers that defendant was induced to execute it through fear and duress. The plaintiff had decree in the court below, and the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Edward* and *A. R. Mendenhall*, with an oral argument by *Mr. Alfred Rush Mendenhall.*

For respondent there was a brief over the name of *Northup & Northup*, with an oral argument by *Mr. Henry Hale Northup.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

Sundry motions and demurrers were sustained or overruled by the trial court, but the errors assigned on account of such rulings are not of sufficient importance to merit an extended consideration.

The complaint alleges that the contract was under seal, which is of itself prima facie evidence of a consideration: B. & C. Comp. § 765. And, moreover, it appears from the complaint that it was in settlement and as a compromise of certain claims made by the plaintiff against the defendant in good faith, and was therefore supported by a sufficient consideration : *Smith* v. *Farra*, 21 Or. 395 (28 Pac. 241, 20 L. R. A. 115). The portions of the answer striken out consisted principally of an extended and somewhat detailed narrative of the conduct, temper and disposition of the plaintiff, and the relationship of the parties from the time of their first acquaintance to the beginning of this suit, and was either evidentiary in character or wholly immaterial to any issue in the case. There is no averment that the consideration of the contract was the illicit relations of the parties, or that such consideration was immoral, and therefore the character or conduct of the parties have no particular bearing upon the real issues, except as they may affect the defense that the contract was executed by the defendant through fear and duress. The only questions presented by the pleadings are whether the contract or agreement of settlement was sup-

ported by a sufficient consideration, and, if so, whether the defendant executed it voluntarily.

1. The plaintiff asserts that the consideration for the agreement was the settlement and compromise of bona fide claims which she had against the defendant, arising out of their business transactions and personal relations, while the defendant's position is that there was no ground for such claims, and that they were not made in good faith, and therefore did not constitute a sufficient consideration to support the contract. The defendant alleges and testifies that he left Portland in 1899, and went to Manila to escape from the plaintiff, but that she followed him without his consent and against his will. In this he is contradicted, not only by the testimony of the plaintiff, but by his own letters written to her after he arrived in Manila. Before he had been permitted to land, and while still in quarantine, he wrote, advising her of his arrival, telling her where to address letters to him, and saying he would write again when he got ashore. From that time until she left Portland he was in correspondence with her, and his letters are in evidence. On August 19th he wrote that he had purchased the interest of his partner in the business, and asked her to come to Manila as soon as she could. On the next day he wrote again, telling her of a line of steamers which she could take direct from Portland, and asked her to come "as soon as you get things straightened up. I need you. Come soon." And added, "I think we can make all the money we need in the next five years." The plaintiff testified that after she arrived in Manila defendant said to her: "Little girl, work hard. I know it is pretty hard, but when we get home we will be all right, we will be fixed"; that she and the defendant were supposed to be partners; that he always said the money made would belong to them equally; that she negotiated the sale of the business in 1901, and after it

was completed, the defendant divided the money then on hand ($22,000) and gave one-half of it to her and kept the other himself; that when they arrived home they each deposited in Ladd & Tilton's bank $11,000; that when they got to the bank with the money the defendant said: "'Now, we will put the money in the bank; I want to put this money in so and so.' Well, I said: 'You want to put it in so I can draw, and so you can draw.' He said: 'We will divide it, half and half;' and he said to the cashier: 'You had better put it in Jackson per Jackson.'"

The defendant contradicts the plaintiff in many particulars and asserts that she was working for him while in Manila at a salary of $100 a month, and had no interest in the business. Whatever the truth in this regard may be, enough appears to show that at the time the agreement sued upon was made, plaintiff was claiming one-half the profits of such business as a partner, and that such claim had some foundation in fact and was made in good faith. The agreement was entered into in settlement of and as a compromise of the dispute or controversy, and will therefore be enforced if voluntarily executed by the defendant. "If there be a dispute between parties," says the Supreme Court of West Virginia, "in which one of the parties not only makes a bona fide claim against the other, but there is in law and fact some foundation for his claim, though whether it be well founded may be doubtful, and the party, who is thus claimed to be subject to a liability, to settle the dispute and avoid litigation, agrees to pay the other party a sum of money or makes to him a promise to do anything else, such promise is based on a sufficient consideration, and may be enforced": *Davisson* v. *Ford*, 23 W. Va. 617. The same principle was applied in *Smith* v. *Farra*, 21 Or. 395 (20 L. R. A. 115, 28 Pac. 241).

2. The defendant testifies that plaintiff is a desperate and dangerous woman; that she threatened him with a criminal prosecution for seduction, and with great personal violence, even to the taking of his life, if he did not sign the agreement in question, and that by reason of such threats and through fear of such violence he executed the same. In this he is not only contradicted by the plaintiff, but by Judge Northup, who acted for her in making the settlement. The latter says:

"I communicated with Mr. Jackson in regard to the statement of Mrs. Dickey, the plaintiff. I was in communication with Mr. Jackson nearly two weeks. Mr. Jackson was in my office several times. I cannot say how many times, and we were negotiating in regard to the settlement. I informed Mr. Jackson that there would be litigation unless there was a settlement. Mr. Jackson said immediately that he did not want any litigation; he was willing to settle if we could come to terms. Various sums were named, until finally, on the 26th of May, 1904, Mr. Jackson, Mrs. Dickey and I, were in the office, and it was agreed that the sum of $10,000 and $400 interest on the maturity of the certificate of deposit should be paid to Mrs. Dickey. * * I told the parties at that time that I would draw the papers up. For some reason I do not now recall that the papers would not be ready earlier than Thursday, the 28th. This was on Tuesday, the 26th, and I told the parties to appear in my office on Thursday, the 28th, at 2 o'clock in the afternoon. On Thursday, the 28th, Mr. Jackson came in before Mrs. Dickey appeared. I had the papers drawn, and handed a copy to Mr. Jackson, and said to Mr. Jackson, 'Read this paper and examine it, and take it to your lawyer and see that it is all right.' Mr. Jackson read the paper. He remarked before he read it, 'No, I don't want any lawyer,' and in substance I think he said: 'I am lawyer enough for this matter. I know what I want,' or words to that effect. Thereupon the papers were executed; Mrs. Dickey coming in shortly after, and after both parties were there the witnesses were called in, the papers were signed, and one

copy of the instrument was handed to Mr. Jackson and the other was retained by Mrs. Dickey, who gave it to me to keep until the maturity of the certificate."

And he states that Mr. Jackson was not in any way averse to the signing of this agreement.

"I told Mr. Jackson that litigation would arise unless there was a settlement, and he said: 'No, I don't want any litigation. I want to keep out of the courts.' That was the substance of what he said. It may not be his exact language."

It is apparent, therefore, that the agreement in question was voluntarily executed by the defendant in settlement, and as a compromise of a dispute between himself and the plaintiff concerning her interest or rights in property held by him, and, as such, ought in justice and equity to be enforced. The decree of the court below is affirmed.                                    AFFIRMED.