Argued May 28, decided June 4, 1912.

## BAILEY v. FRAZIER.

[124 Pac. 643.]

MORTGAGES—NATURE OF ESTATE—TRUST—TITLE.

1. A trust as to property implies the holding of title for the use and benefit of another, and hence a mortgagee in possession, having no title under his mortgage, cannot be a trustee of such property.

MORTGAGES—CONSTRUCTION—TITLE OF MORTGAGEE.

2. A mortgage does not pass the title to the mortgagee, but is only a lien upon the property, the title remaining in the mortgagor, and this is true as to an instrument in form a deed but intended as a mortgage.

---

As to whether a deed absolute on its face, but intended as a mortgage, conveys the legal title, see note in 11 L. R. A. (N. S.), 209.

As to effect of retaining statement of account to render it an account stated, see note in 29 L. R. A. (N. S.), 334.                    REPORTER.

FRAUD—ELEMENT OF FRAUD IN GENERAL.

3. To establish fraudulent representations it must be shown that the representations were false, that defendant making them knew they were false, that they were made with intent to defraud, and that the party seeking relief must have relied upon such representations.

FRAUD—FRAUDULENT REPRESENTATIONS—MATTERS OF FACT OR OPINION.

4. A mortgagee in possession under a mortgage which conveyed no legal title to him, when called upon for a reconveyance, denied that he held the property in trust and declared that he could prove that he did not so hold it. *Held,* that his denial and declaration were not representations of fact but mere claims and boasts not constituting any basis for fraud.

FRAUD—FRAUDULENT REPRESENTATIONS—RELIANCE.

5. A mortgagor, knowing at the time he requested a reconveyance from the mortgagee that the deed was a mortgage and that the mortgagee had agreed to reconvey the property on payment of the debt secured, cannot be said to have relied upon what the mortgagee said or claimed as to his title being absolute, even if otherwise what the mortgagee said was false and fraudulent.

ACCOUNT STATED—ASSENT OF PARTIES.

6. Where a mortgagor holding an equity of redemption was rendered a stated account showing his indebtedness to the mortgagee, to which he made no objection for more than five years, the statement became an account stated.

COMPROMISE AND SETTLEMENT—CONSIDERATION—DOUBTFUL CLAIM.

7. A settlement of a doubtful claim between a mortgagor and a mortgagee by virtue of a quitclaim deed to the mortgagee for which he paid a fixed amount in cash will be upheld.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by Douglas W. Bailey against William Frazier to declare a deed absolute in form to be a mortgage; to compel an accounting for the rents and profits collected by the defendant while in possession of the lands involved; and to compel a reconveyance to the plaintiff. The complaint alleges in substance that in February, 1899, the plaintiff was the owner of the real property in question, the legal title thereto being held by Julia Haller as trustee for the plaintiff; that about that date the plaintiff caused her to convey the property to the defendant by warranty deed absolute in form,

but in truth a mortgage, intended by plaintiff and defendant to be such, conditioned for the repayment of money advanced by the latter for the plaintiff and for taxes and interest paid by defendant on a prior mortgage which the plaintiff had assumed; and that the defendant agreed to reconvey the premises when the plaintiff should pay the debt.

Averring that he had no knowledge of either the receipts or disbursements made by the defendant, the plaintiff demands an accounting and prays for relief in that respect. The answer denies that at the time of the conveyance by Miss Haller to the defendant the plaintiff was, or at any time since then has been, the owner of the property in question or any part thereof. The answer further denies that the deed from Haller to the defendant was intended as a mortgage in any respect, and denies all liability whatever to the plaintiff.

In his separate answer the defendant alleges in substance that in July, 1895, he conveyed the property in question to the plaintiff subject to a mortgage upon the premises for $15,000, for one-half of which the defendant was personally liable; that the plaintiff assumed the mortgage as part of the consideration for the conveyance. In payment for the premises the plaintiff assigned to the defendant mortgages on lands in Eastern Oregon to the amount of $6,500 and gave his notes amounting to $2,000, but that the plaintiff had never paid anything on the notes, and the mortgages were worthless, so that the plaintiff was unable to collect any amount from that source except about $1,300. The answer further avers in substance that the plaintiff in contemplation of bankruptcy and for the purpose of defrauding his creditors conveyed the property by deed to his sister-in-law, Julia Haller; that she held the legal title thereto until about 1898, at which time the defendant was informed by the plaintiff that neither he nor Miss Haller was able to

pay the mortgage or the accrued interest, and requested the defendant to take back the property and cancel the unpaid purchase price thereof, to which the latter assented, and on that basis the Haller deed was executed and delivered to the defendant, whereupon the latter canceled the plaintiff's obligation, returned to him the mortgage, and offered to surrender the plaintiff's notes, and since then the defendant has never made any claim whatever against the plaintiff on account of the purchase price of the lot. The answer concludes with the allegation:

"That plaintiff made no further claim in and to said property or for any rents or profits thereof until about the month of June, 1906, at which time after this defendant had sold and disposed of said property, which plaintiff then and there well knew, plaintiff came to defendant and claimed that he still had some equity in said premises and demanded $400 for his alleged interest therein, and that this defendant in order to avoid litigation and to prevent plaintiff from clouding the title by instituting suit, which plaintiff then and there threatened to do, defendant offered to pay plaintiff the sum of $300 in full settlement and payment of any and all interests or pretended interest that plaintiff might have in or to said premises; that said proposition was accepted by plaintiff and thereupon plaintiff and wife made, executed, and delivered to this defendant a good and sufficient quitclaim deed of all his interest in the property in question, and thereupon this defendant paid the plaintiff the sum of $300 in lawful money of the United States, which was acknowledged by plaintiff, and it was then and there agreed and understood by and between plaintiff and defendant that plaintiff had no further claim or interest in or to said lots or any portion thereof."

Concerning the quitclaim deed mentioned in the quoted part of the answer, the reply alleges in substance that about the date of its delivery the plaintiff demanded a reconveyance of the property from the defendant and an accounting of the rents, issues, and profits, but the

latter denied and disputed that he ever held the property in trust or under the terms and conditions alleged in the complaint, or that plaintiff had any interest in the premises whatever. The reply also avers:

"That at that time the plaintiff had no evidence of the existence of said trust as alleged in plaintiff's complaint except that which was in the possession of the defendant, and the plaintiff had no means of establishing the contract alleged in plaintiff's complaint other than by and with the words and evidence of the defendant; that the representations and statements of the defendant that he did not hold said property in trust were false and fraudulent and made with the intention to cheat, wrong, and defraud the plaintiff, and at the time he made the same he well knew that he had at the dates and times alleged in the plaintiff's complaint taken a conveyance of said property to himself for the purpose and in the manner alleged in the plaintiff's complaint, and that by reason of the defendant's said false and fraudulent statements and representations that he had not received said conveyance from Julia Haller in trust for the plaintiff, and his further declarations and statements to plaintiff that he could prove and establish by competent evidence that he had not so received the same, and his further declarations that plaintiff could not establish and prove any relation of trust, or that the property was conveyed to him for the purpose as alleged in the amended complaint, the plaintiff was beguiled into and did make the alleged and pretended settlement by which the plaintiff received from the defendant the sum of $300 and executed and delivered to the defendant a quitclaim deed of all rights, title, and interest which he had in and to said premises."

At a hearing on the issues thus formed the court directed a decree for the defendant at the close of plaintiff's case, and the plaintiff appeals. AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Douglas W. Bailey, pro se.*

For respondent there was a brief and an oral argument by *Mr. John H. Hall.*

MR. JUSTICE BURNETT delivered the opinion of the court.

Without deciding the question of fact involved, we may concede, for the purpose of this case, that the deed from Julia Haller to the defendant was in fact a mortgage designed to secure the payment of money advanced by the defendant on account of plaintiff's obligations under the mortgage already on the premises. The plaintiff contends that as a consequence of this situation he has an estate in the property which' Frazier holds as trustee, and that the purchase by the latter of the subject of the trust is at least voidable because it is incompatible with that fiduciary relation. In support of his theory that the defendant is a trustee under the circumstances detailed, the plaintiff cites *Manaudas* v. *Mann,* 22 Or. 525 (30 Pac. 422). In that case Mann had given to the plaintiff a bond for a deed stipulating to convey the property to the latter upon payment of a certain sum of money within a stipulated period. Before the bond matured, Manaudas, being in debt to Heilner & Cohn, conveyed to them the property described in the bond together with other land by deed absolute in form but really as mortgage security for his debts. Mann then conveyed the realty mentioned in the bond to Heilner & Cohn ostensibly in performance of its condition on his part, and, at a still later date before the maturity of the plaintiff's obligations to Heilner & Cohn, they reconveyed the property to Mann, who had at all times knowledge of all the facts mentioned constituting the transaction. This court held that, possessing such knowledge, Mann took the property impressed with a trust in favor of the plaintiff, permitting him to fulfill the conditions of his bond and take title to the property. The doctrine of that case would be applicable in the present instance if Miss Haller had held the property in trust for the plaintiff here and the defendant had taken conveyance from her with knowledge of that relation. Under

such circumstances the defendant would have succeeded to the trusteeship of Miss Haller and would have been bound by its obligations because of his knowledge of the trust. It is not pretended, however, either in the pleadings or in the testimony, that the defendant had any knowledge of any relationship existing between Miss Haller and the plaintiff at the time of the conveyance from her to the defendant.

1, 2. Taking the complaint for all it is worth, the most that can be said of the defendant is that he was a mortgagee in possession. To be a trustee he must have had the title, for a trust, as respects property, implies the holding of the same for the use and benefit of another. It is not apparent how one can be a trustee of property to which he holds no title.

In *Kinney* v. *Smith*, 58 Or. 158 (113 Pac. 854), Mr. Chief Justice EAKIN reviews the Oregon precedents from *Thompson* v. *Marshall*, 21 Or. 171 (27 Pac. 957), down to the present time, and says:

"In this State a mortgage does not pass the title to the mortgagee. It is only a lien upon the property, the title remaining in the mortgagor, and this is true regardless of the form of the instrument. It applies to an instrument in form a deed, but intended as a mortgage. The title to the property cannot pass to the mortgagee except by foreclosure as provided by the statute, or a relinquishment by the mortgagor."

It follows that the Haller deed to the defendant created no trust whatever and left the defendant at liberty to deal with the plaintiff respecting the equity of redemption still held by the latter as well as he could before.

3. The plaintiff endeavors to avoid the effect of the quitclaim deed of himself and wife of June 29, 1906, to the defendant, by averring that the same was induced by fraud. It has often been laid down as a rule for pleading fraud in this State that the representations must

have been false; that the defendant making them knew they were false; that they were made with the intent to defraud; and that the party seeking to be relieved from the fraud must have relied upon such representations. *Rolfes* v. *Russel,* 5 Or. 400; *Dunning* v. *Cresson,* 6 Or. 241; *Martin* v. *Eagle Development Co.,* 41 Or. 448 (69 Pac. 216); *Anderson* v. *Adams,* 43 Or. 621 (74 Pac. 215); *Wimer* v. *Smith,* 22 Or. 469 (30 Pac. 416).

4. Reduced to its lowest terms, the substance of the reply in that respect is that, when called upon for a conveyance, the defendant denied that he held the property in trust and said he could prove that he did not so hold it. We have shown, as a matter of law, that he did not hold the property in trust, but at best was only a mortgagee in possession. But giving to the reply the wider signification of charging that the defendant denied any interest of the plaintiff in the property, the allegation falls far short of a sufficient averment of fraud on the part of the defendant to annul the quitclaim deed mentioned. His mere denial of past transactions was not such a representation as would amount to fraud, otherwise fraud could be predicated of any challenge of an adverse claim. His declarations of what the defendant could prove and what the plaintiff could not prove are not representations of fact but mere boasts which do not constitute any basis for fraud.

5. Moreover, the plaintiff does not show that he relied upon those statements or had any right to rely upon them. If it was a fact, he knew at that time as well as the defendant that the deed was a mortgage and that the defendant had agreed to reconvey the property on payment of the debt secured. Knowing all these things as he then did, he cannot be said to have relied upon what the defendant said even if otherwise it amounted to a false and fraudulent expression. This doctrine is well

illustrated in the criminal case of *State* v. *Miller,* 47 Or.
562 (85 Pac. 81: 6 L. R. A. [N. S.] 365).

6. As between himself and the defendant, the plain-
tiff, if we take his statement according to its legal effect,
then held the equity of redemption in the property. More
than five years before that time, to wit: in February,
1901, as appears in evidence on behalf of the plaintiff,
the defendant had rendered to him a stated account show-
ing that there was due from the plaintiff to the defend-
ant interest and expenses in a net balance of $2,455.15;
amount paid on the principal of the mortgage, $2,500;
due one-half of the balance of the principal on the $15,-
000 mortgage, $5,000—amounting in total to $9,955.15.
It does not appear that the plaintiff ever made any objec-
tion to this statement, so that it became a stated account
within the doctrine of *Fleischner* v. *Kubli,* 20 Or. 328
(25 Pac. 1086).

It is admitted that the plaintiff never paid anything
whatever to the defendant on the purchase price of the
premises except the $1,300 derived by the defendant from
the mortgages assigned to him by the plaintiff at the
time of the purchase. This is more than overbalanced
by either of the three charges in the account rendered
as above mentioned, even if it did not enter in the cal-
culation there. Moreover, on August 19, 1899, almost
a year after the deed from Haller to Frazier which the
plaintiff says was a mortgage, he verified his petition
in bankruptcy in the United States district court for
Oregon, wherein he deposed that he had no real estate
and no personal property. Confronted with these cir-
cumstances, as he must have known them at the time,
it was at least doubtful whether he could have even estab-
lished his title to the property. It is equally doubtful if
he could have effected or even attempted a redemption
thereof at that time in view of the large accumulation
of unchallenged charges disclosed by the stated account

mentioned. He does not pretend that the defendant made any representation as to the amount he had expended on account of the property or any amount that he had received since that statement so as to deceive him in that respect.

7. The conclusion of the whole matter is that the plaintiff and defendant by virtue of the quitclaim deed of June 29, 1906, for which the defendant paid $300 to the plaintiff, made a settlement of the doubtful claim which the courts will always uphold. *Smith* v. *Farra,* 21 Or. 395 (28 Pac. 241: 20 L. R. A. 115) ; *Sing On* v. *Brown,* 44 Or. 11 (74 Pac. 207) ; *Regents* v. *Hutchinson,* 46 Or. 57 (78 Pac. 1028) ; *Thayer* v. *Buchanan,* 46 Or. 106 (79 Pac. 343) ; *Dickey* v. *Jackson,* 47 Or. 531 (84 Pac. 701) ; *Baines* v. *Coos Bay Nav. Co.,* 49 Or. 192 (89 Pac. 371).

The decree of the court below is affirmed.

AFFIRMED.   ·