Argued October 8, decided October 21, 1913.

# ROANE *v.* UNION PAC. LIFE INS. CO.

(135 Pac. 892.)

**Compromise and Settlement—Validity.**

1. A compromise and settlement of a claim asserted on reasonable grounds and in good faith, which the parties, having equal knowledge of the facts, consider doubtful, constitutes a new and valid agreement, which is enforceable, though the matter compromised be not in fact doubtful in legal contemplation, and the settlement be not what a court would have adjudged on the facts involved.

**Insurance—Claim—Compromise and Settlement—Validity.**

2. Plaintiff's husband, since deceased, held a policy for $5,000 in a New York insurance company, on which he had paid the first premium when the company failed. The A. company was incorporated to take over the risks, and solicited plaintiff's husband to apply for a policy for the same amount in it. This he did. His application was accepted, and he gave his note to the company for the first annual premium. Thereafter defendant was organized, and took over all the assets and business of the A. company and assumed its liabilities. The premium note was turned over to defendant and by it collected before decedent's death. He died before receiving the policy from defendant, and plaintiff having made a claim which was disputed, an agreement was entered into that she should receive $2,750, for which defendant's agent executed defendant's demand note. *Held,* that such agreement was a valid compromise and settlement, so as to form a sufficient consideration for the note.

**Insurance—Authority of Agent—Question for Jury.**

3. In an action on a note executed by the agent of an insurance company in compromise of a claim, he having authority to effect a settlement, and having informed plaintiff that he was authorized to execute the note, and having done so and received a release which defendant, on repudiating the agent's authority, did not offer to return, whether the agent had such authority was for the jury.

**Insurance—Authority of Agent—Ratification.**

4. Where an agent of an insurance company authorized to effect a settlement of a claim, executed a note on defendant's behalf for the amount of the settlement and received from plaintiff a release of such claim, which defendant, though repudiating the settlement, refused to return until five or six months after knowledge of the compromise, it thereby ratified the compromise.

**Insurance—Operation of Company—State License—Statutes—Application—Contracts.**

5. Section 4609, L. O. L., providing that no insurance company shall transact a life insurance business in Oregon without a certificate from the State Insurance Commissioner authorizing the same, had no application to the note of a domestic insurance company executed in Washington in settlement of a claim.

Insurance—Companies Doing Business in State—License—Failure to Obtain—Contracts.

6.   Section 4609, L. O. L., prohibits insurance companies from doing business in Oregon without a license, and Section 4646 provides a fine of from $100 to $500 for a violation of the insurance law by an officer, agent, or employee of any insurance company. *Held*, that such provisions applied only to officers, agents, and employees of insurance companies, and did not invalidate policies issued or contracts made by insurance companies within the state before receiving a license.

Corporations—Contracts—Power—Estoppel.

7.   Where a corporation has executed a contract in excess of its granted powers, and has received the benefits thereof, it is estopped to deny its power to make it in an action brought to enforce the same.

[The doctrine of *ultra vires* as applied to the contracts of private corporations is the subject of a note in 70 Am. St. Rep. 156.]

From Multnomah: GEORGE N. DAVIS, Judge.

Department 1.   Statement by MR. JUSTICE RAMSEY.

This is an action by Eva L. Roane against the Union Pacific Life Insurance Company, a corporation, upon a promissory note which the plaintiff alleges was executed by the defendant for $2,750.   A judgment of nonsuit was entered against the plaintiff in the court below.   The plaintiff appeals.   The facts appear in the opinion of the court.                REVERSED.

For appellant there was a brief over the names of *Bauer & Greene* and *Mr. A. H. McCurtain*, with an oral argument by *Mr. Thomas G. Greene*.

For respondent there was a brief over the name of *Corliss & Skulason*, with an oral argument by *Mr. Guy C. H. Corliss*.

MR. JUSTICE RAMSEY delivered the opinion of the court.

1.   On the 27th day of June, 1912, a promissory note, of which the following is a copy, was executed to the plaintiff:

"$2,750.00.                      June 27, 1912.

"On demand after date, without grace, we promise to pay to the order of Eva L. Roane, at Seattle, Wash., twenty-seven hundred and fifty dollars, in gold coin of the United States of America, of the present standard value, with interest thereon in like gold coin at the rate of —— per cent. per —— from —— until paid, for value received. Interest to be paid ——, and if not so paid, the whole sum of both principal and interest to become immediately due and collectible, at the option of the holder of this note. And in case suit or action is instituted to collect this note, or any portion thereof, —— promise and agree to pay in addition to the costs and disbursements provided by statute, such additional sum, in like gold coin, as the court may adjudge reasonable for attorney's fees to be allowed in said suit or action.

"[Signed]    UNION PACIFIC LIFE INS. CO.

"By E. E. HOWES."

The note, of which the foregoing is a copy, was executed by E. E. Howes as agent for the defendant, at Seattle, Washington, on the day that it bears date. He subscribed the defendant's name thereto, and delivered the note to the plaintiff in compromise and settlement of a claim that she had against the defendant for $5,000. At the time that he executed said note, and in consideration of the execution thereof, the plaintiff executed to the defendant and delivered to said E. E. Howes, as agent of the defendant, a written release of her said claim against the defendant for $5,000.

The defendant claims that said E. E. Howes had no authority to execute said promissory note, and that there was no consideration for its execution, and that it is void, and not the note of the defendant. The defendant's answer also alleges that the plaintiff, prior to the execution of said promissory note, had made a

wholly unfounded claim against the defendant on account of alleged insurance on her husband's life, and that at no time did the defendant ever issue any policy of insurance upon the life of her husband, or enter into any contract with him or with the plaintiff, or with anyone, to insure his life, and that it was not licensed by the Insurance Commissioner of Oregon to transact any insurance business in this state. The defendant claims, also, that said note, if it was signed by said E. E. Howes on behalf of the defendant, was so executed without authority, and without consideration, and solely on account of said unfounded and illegal claim of the plaintiff for said pretended insurance upon the life of her husband. The reply denies most of the new matter pleaded in the answer, and then sets out in detail what the plaintiff claims are the facts upon which her said claim for $5,000 for insurance of the life of her husband was based.

The evidence tends to show that E. E. Howes, as agent of the defendant, made an agreement with the plaintiff, that as a compromise of her said claim against the defendant for said sum of $5,000, for insurance, said company would pay her $2,750 on her executing to the defendant a written release of her said claim, and that she accepted said offer and executed to the defendant said release and delivered it to said Howes for the defendant, and that Howes, at the same time, as agent for the defendant, executed to the plaintiff said promissory note for $2,750, and subscribed the defendant's name thereto. The defendant claims, however, that Howes exceeded his authority as agent of the defendant in agreeing for the defendant that the company would pay her that amount, and in executing said note therefor.

The evidence shows that the plaintiff was the wife of Orville F. Merrill, and that he died in August, 1909.

Some time prior to the execution of said note she married a man named Roane.

Mark T. Kady is the president of the defendant, and in 1907 he was an agent for the Mutual Reserve Life Insurance Company of New York, and did business for that company in the States of Washington and Oregon. In November, 1907, Orville F. Merrill, at the solicitation of Mr. Kady, applied to him for a policy of $5,000 on his life, to be issued by that company. Said policy was issued to him, and the plaintiff was named as the beneficiary therein. Mr. Merrill gave his note for the first annual premium for said insurance, and said note was paid. In less than a year after said policy was issued said New York company became insolvent, and was placed in the hands of a receiver in New York. Mr. Kady had previously organized what he called the "Agency Associates of America" as a "holding company." Its articles of incorporation provided that it had power, *inter alia,* to transact insurance business. He was president of the company, and, soon after the failure of the New York company, he issued printed circulars to the policy-holders of the New York company residing in Oregon and Washington, offering to accept them as members of the New York company upon the same terms as to the character of insurance policy, rate of premium, etc., on the condition that such policy-holders would keep their insurance in force *by paying the premiums to the Agencies Company* in accordance with its rules and by-laws. As a part of this plan the policy-holders were to subscribe for one share of stock in the Agencies Company for each $1,000 of insurance carried. This offer was made to Mr. Merrill, and by him accepted. He subscribed for five shares of stock of said company at $120 per share, and gave his note to the company for $600. He also made application

to said company for a policy of insurance on his life
for $5,000, to be thereafter issued, and gave his note
for $140.70 for the first annual premium, and he and
the plaintiff assigned to said Agencies Company the
policy which he had in said New York company, as
aforesaid, with their claim against the receiver for
the dividends that might accrue thereon.   Mr. Merrill
afterward paid $30 as assessments on his said stock in
said Agencies Company.   The defendant company was
organized, and the evidence tends to show that the de-
fendant took over the assets of said Agencies Com-
pany, and assumed its obligations.

On July 15, 1909, Mr. Merrill paid *to the defendant*
the note which he gave to the Agencies Company for
$140.70 for the first annual premium on the policy of
insurance that was to have been issued by that com-
pany, said note having been given December 5, 1908.
Mr. Kady says that it was the intention of the defend-
ant company to take over the assets of the Agencies
Company, and to assume its obligations.   He testifies,
also, that when he sent out the circulars referred to,
*supra,* to the policy-holders of the New York company,
he contemplated the organization of a new life insur-
ance company to insure the lives of those policy-hold-
ers.   He testifies, also, that no policy was ever issued
on the application made to the Agencies Company,
either by that company, or by the defendant.   The
evidence shows that Mr. Merrill, at the solicitation of
Mr. Kady, applied to the Agencies Company for insur-
ance in that company in the sum of $5,000, and that
his application was accepted, and that he gave his
note for the first annual premium.

The evidence tends to show, also, that Mr. Kady,
after the defendant had taken over the assets and as-
sumed the liabilities of the Agencies Company, on
July 10, 1909, wrote to Mr. Merrill, urging him to pay

his note that he had given to the Agencies Company
for $140.70 for the first annual premium on the insur-
ance of $5,000 on the policy that he applied for on
September 24, 1908. This letter was written by Mr.
Kady as president of the defendant, and Mr. Merrill
paid said note *to the defendant* on July 15, 1909. Said
application for said policy is a printed form sent to
Mr. Merrill by Mr. Kady, dated September 24, 1908,
and there is written diagonally across its face the fol-
lowing: "I hereby agree that the policy issued hereon
shall not take effect until the first premium has been
paid during good health, and after the company have
complied with the laws of the State of Oregon." The
evidence tends to prove that the Agencies Company
accepted said application for said policy, and agreed
to issue to Mr. Merrill a policy therefor, and that the
plaintiff was to be the beneficiary thereof, and that,
after the defendant was organized, and had taken over
the assets and assumed the liabilities of the Agencies
Company, as stated *supra,* the defendant by its presi-
dent, Mr. Kady, claimed the right to collect, and did
collect, from Mr. Merrill as aforesaid, the note that he
had executed to the Agencies Company for the annual
premium on the policy that was to have been issued
to him. The amount so paid was $145.60, and it was
paid July 15, 1909. On December 26, 1911, the de-
fendant tendered to the plaintiff, by check, sent by
letter, $140.70 as a return of the amount that Mr. Mer-
rill had paid as a premium for the policy that was to
have been issued to him, but the plaintiff refused to
accept said money, and returned said check to the de-
fendant.

We have stated a summary of facts that the plain-
tiff's evidence tended to prove, showing the nature of
the plaintiff's claim for $5,000 for insurance, which
was the basis for the compromise that resulted in the

execution of the promissory note upon which this action is founded.

It will be seen from what we have stated that the plaintiff's husband held a policy for $5,000 in the New York company, and that he paid the first premium therefor, and that said New York company failed, and that the Agencies Company solicited him to apply for a policy for the same amount in it. He made the application as stated, *supra,* and it was accepted, and he executed his note to that company for $140.70 for the first annual premium. The defendant company was organized, and the evidence tends to prove that it took over all the assets and business of the Agencies Company, *and assumed its liabilities.* The evidence shows that said note for said premium was turned over to the defendant, and by it collected from Mr. Merrill before his death. It would seem that he was entitled to a policy on making that payment.

Mr. Merrill died in August, 1909, and the plaintiff, who was named in said application to be the beneficiary of said insurance, made proof of her claim against the defendant for said insurance, and presented it to the defendant. The evidence shows that the defendant and the plaintiff made many efforts to compromise her said claim, and that these efforts extended over a long period of time. It appears that the defendant appointed several committees at different times to confer with the plaintiff with a view of compromising and adjusting her claim. The evidence tends to prove that the defendant and its committees conceded that the plaintiff was entitled to be paid a part of her claim, and that they offered to pay her various sums, partly in money and the remainder in stock in the defendant, but that the plaintiff refused to accept any of the defendant's stock.

1. The defendant contends that the plaintiff's claim was invalid, and that it was insufficient to form a basis for a valid compromise, and that a promissory note executed as the result of a compromise of such a claim is without consideration and void.  The rule is well established that a compromise and settlement of a claim, asserted on reasonable grounds and in good faith, which the parties, having equal knowledge of the facts, consider doubtful, constitutes a new and valid agreement which is enforceable although the matter compromised be not in fact doubtful in legal contemplation, and the settlement be not what a court would have adjudged upon the facts involved: *Wells* v. *Neff,* 14 Or. 66 (12 Pac. 84, 88) ; *Smith* v. *Farra,* 21 Or. 395 (28 Pac. 241, 20 L. R. A. 115) ; *Davisson* v. *Ford,* 23 W. Va. 617 ; *Thayer* v. *Buchanan,* 46 Or. 106 (79 Pac. 343) ; *Dickey* v. *Jackson,* 47 Or. 531 (84 Pac. 701) ; *Baines* v. *Coos Bay N. Co.,* 49 Or. 192 (89 Pac. 371) ; *Multnomah County* v. *Title Guarantee Co.,* 46 Or. 523 (80 Pac. 409).

In *Thayer* v. *Buchanan,* 46 Or. 106 (79 Pac. 343), the court says: "In the absence of fraud or mistake, however, the compromise of *bona fide* claims equally within the knowledge of the parties concerned must be held final and conclusive of all matters going to make up the settlement."

In *Dickey* v. *Jackson,* 47 Or. 531 (84 Pac. 701), the court says: "Whatever the truth in this regard may be, enough appears to show that at the time the agreement sued on was made, plaintiff was claiming one half the profits of such business as a partner, and that such claim had some foundation in fact and was made in good faith.  The agreement was entered into in settlement of and as a compromise of the dispute or controversy, and will therefore be enforced if voluntarily executed by the defendant."

In *Davisson* v. *Ford,* 23 W. Va. 617, the Supreme Court of West Virginia says: "If there be a dispute between the parties, in which one of the parties not only makes a *bona fide* claim against the other, but there is in law and fact some foundation for his claim, though whether it be well founded may be doubtful, and the party, who is thus claimed to be subject to a liability, to settle the dispute and avoid litigation, agrees to pay the other party a sum of money, or makes to him a promise to do anything else, such promise is based on a sufficient consideration, and may be enforced."

8 Cyc. 509, says: "The usual test, however, as to whether a compromise and settlement is supported by a sufficient consideration *is held to be, not whether the matter in dispute was really doubtful,* but whether or not *the parties bona fide considered it so,* and that the compromise of a disputed claim made *bona fide* is a sufficient consideration without regard to whether the claims be in suit or not."

2. We think that the evidence tends strongly to prove that the plaintiff's claim was made in good faith, and that it had sufficient foundation to be the basis of a valid compromise, and to constitute a sufficient consideration to support the promissory note on which this action is based. The evidence shows that both parties considered it a *bona fide* controversy, and that much time and effort were devoted to attempts to reach a compromise. That the defendant considered that the plaintiff's claim had a substantial foundation is shown by the fact that the company made many efforts to reach a compromise, and uniformly offered to pay the plaintiff a considerable sum for a release.

3. The defendant contends that the note which is the basis of this action is not the defendant's note, and that E. E. Howes signed the company's name to it,

and delivered it to the plaintiff, without having been authorized by the defendant to do so. It was incumbent on the plaintiff to show *prima facie* that Howes had authority to execute the note. The evidence shows that Howes was the defendant's agent to compromise with the plaintiff. He made several efforts in Portland to adjust the matter with her, and when she returned to Seattle the defendant sent him there to make another attempt to compromise. The defendant claims, however, that Howes' authority was limited, and that he was authorized to make an agreement to pay her at the utmost only $1,750 in money and $1,000 in stock in the defendant, and that he exceeded his authority in executing the note for $2,750. The evidence tends to show that Howes informed the plaintiff that he had authority to make the compromise, and to execute the note for $2,750, and there is no evidence tending to prove that the plaintiff had any notice that the authority of Howes was limited. The evidence shows that Howes, as agent of the defendant, executed the promissory note on which the action is based in compromise and settlement of the plaintiff's claim, and in consideration of her executing to the defendant a release of her claim for the $5,000 for insurance. The note and the release were executed at the same time. The note, by its terms, was made payable on demand, and, a few days after its execution, the plaintiff called on the defendant, and demanded its payment, and the president of the defendant refused to pay it, and told her that it was not worth the paper upon which it was written, and that Howes had no authority to execute it. The plaintiff then asked him to return to her the release that she had executed to the defendant when the note was made, but the president of the defendant refused to return it. He admitted that Howes had delivered the

release to the company, and that the company had it. The evidence shows that the defendant never returned said release to the plaintiff, and that it never offered to return it until this case was on trial in the court below in January, 1913. The note and the release were executed on June 27, 1912, and this action was begun August 14, 1912. The defendant refused to return this release for more than four months after this action was brought, and, on its offering to return it at the trial, the plaintiff refused to accept it. The acts of an agent within the scope of his real or apparent authority are binding upon his principal: *Hahn* v. *Guardian Assurance Co.,* 23 Or. 576 (32 Pac. 683, 37 Am. St. Rep. 709) ; *Austrian & Co.* v. *Springer,* 94 Mich. 350 (54 N. W. 50, 34 Am. St. Rep. 350) ; *Methuen Co.* v. *Hayes,* 33 Me. 169 ; *Aerne* v. *Gostlow,* 60 Or. 118 (118 Pac. 277) ; *Farley* v. *Western Ins. Co.,* 62 Or. 41 (124 Pac. 199) ; Mechem, Agency, § 283.

In *Hahn* v. *Guardian Assurance Co.,* 23 Or. 576 (32 Pac. 683, 37 Am. St. Rep. 709), the court says: ''The acts of an agent performed within the scope of his real or *apparent* authority are binding upon his principal. It is enough if, under all the circumstances, he had *apparent* authority in the matter, although in fact his authority was limited.''

In *Aerne* v. *Gostlow,* 60 Or. 118 (118 Pac. 277), the court says: ''Persons dealing with a known agent have a right to assume, in the absence of information to the contrary, that his agency is *general.*''

In *Methuen Co.* v. *Hayes,* 33 Me. 169, the court says: ''The agency of Davis was lawfully proved. There was no evidence that it was a *limited* agency. In the absence of such evidence, the agency is to be considered a *general* one.''

In *Austrian & Co.* v. *Springer,* 94 Mich. 350 (54 N. W. 50, 34 Am. St. Rep. 350), the court says: ''The

question is not, what was the authority actually given (the agent)? but, what was the plaintiff, in dealing with the agent, justified in believing the authority to be? * * Whatever attributes properly belong to the character bestowed will be presumed to exist, and they cannot be cut off by private instructions of which those dealing with the agent are ignorant.''

Mechem, Agency, Section 283, speaking of the authority of general and special agents, says: ''In either case (general or special agency) the question of the authority of the agent must depend, so far as it involved the rights of innocent third persons who have relied thereon, upon the *character* bestowed and not upon the *instructions* given. Or, in other words, the principal is bound to third persons who have relied thereon in good faith and in ignorance of any limitations or restrictions by the *apparent* authority he has given to the agent, and not by the actual or express authority, when that differs from the apparent, and this, too, whether the agency be a *general* or a *special* one.''

In this case, we think that it was a question for the jury, under proper instructions, and not for the court, to determine whether Howes had authority to execute the promissory note under the facts in evidence. There was evidence from which they could properly have found that he had such authority.

4. When the contract of compromise was entered into, Howes, as agent for the defendant, executed the promissory note to the plaintiff, and the plaintiff, in consideration thereof, as stated *supra,* executed to the defendant her written release of her claim for said sum of $5,000, and Howes delivered the release, with a report of what he had done to the defendant, and when the plaintiff demanded of the defendant payment of the note, the defendant refused to pay the note,

and told the plaintiff that the note was worthless, and that Howes had no authority to execute it, and, at the same time expressly refused to surrender the release to the plaintiff, and never offered to return it until five or six months after it had received it and had full knowledge of the compromise contract, and not until several months after this action was begun. The agent Howes executed the note in the name of the defendant. The release was the *fruits* of the compromise contract received by the defendant. According to the evidence, the defendant undertook to disaffirm *part* of the compromise contract, and to retain the *fruits* of it—to repudiate the note, but to retain the release. This the defendant could not do. When a principal wishes to disaffirm the unauthorized acts of his agent, and has knowledge of what his agent has done, he must disaffirm the contract *as a whole.* He cannot retain the *fruits* of the contract and repudiate its *liabilities:* Clark & Skyles, Agency, § 140; Mechem, Agency, §§ 146–157.

Clark & Skyles, Agency, Section 140, says: "Perhaps the most common method of implied ratification is by acceptance by the principal, with full knowledge of all the facts, of the *benefits* of the agent's unauthorized acts, performed in his behalf. If the unauthorized act is such a one as can be ratified by parol, and the principal, knowing all the facts, accepts and retains the benefits of such act, he will be held to have ratified it. This rule is based on the doctrine of ratifications, which has been treated in a previous section. As there seen, a principal must either ratify the whole transaction or *repudiate the whole.* He cannot separate the transaction and ratify the part only that is beneficial to him, repudiating the remainder; but if he, of his own election and with full knowledge, accepts and retains the benefits of an unauthorized transac-

tion, he must also accept the part that is not beneficial, and will be held to have ratified the whole." We approve the foregoing quotation, and hold that if the defendant, after knowing all the facts of the compromise contract, retained the release for an unreasonable length of time, it thereby ratified the whole contract. Of course, if Howe had authority to make the contract, or if he was clothed by the defendant with *apparent* authority to make it, and the plaintiff entered into the contract in good faith without notice of any limitation of his authority, the contract was valid and needed no ratification. Where a principal desires to repudiate the unauthorized acts of his agent, he must do so within a reasonable time after he has full knowledge of his acts: Clark & Skyles, Agency, § 141; Mechem, Agency, § 155.

5. Defendant contends that it had not obtained from the State Insurance Commissioner at the time the note sued on was executed a certificate authorizing and permitting it to transact life insurance business in this state, and that it could not legally execute a note at the time said note was made. Section 4609, L. O. L., says: "No company, * * organized under the laws of this state, * * shall be permitted to transact a life * * insurance business in *this state* without a certificate from the State Insurance Commissioner authorizing and permitting the transaction of such business." It should be noted that the promissory note and the compromise contract were executed in the State of Washington and not in this state. They do not come within the words of this statute.

6. Section 4646, L. O. L., provides for a fine of from $100 to $500 for a violation of the provisions of the insurance law, by an officer, agent or employee of any insurance company. The penalty applies only to officers, agents and employees of insurance companies.

Parties who obtain policies are not subject to any penalty, and this law does not declare that policies issued or contracts made by such companies before they receive certificates from the commissioner of insurance are invalid.

It is the duty of companies to comply with the state law before doing any kind of insurance business in the state. But, when they do business with innocent third parties, without complying with this law, and execute promissory notes, are such notes *void?* When a corporation is incorporated according to law, it has the corporate capacity to do business, but it should comply with the state laws before doing business.

7. We think that both reason and the weight of authority are to the effect that where a corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and an action is brought against it to enforce the contract, it is estopped to set up the defense that it had no power to make it: 10 Cyc., pp. 1156, 1157; 2 Morawetz, Corp., § 689; *Union H. Co.* v. *Plume,* 58 Conn. 219 (20 Atl. 455); *People* v. *Suburban R. Co.,* 178 Ill. 594 (53 N. E. 349, 49 L. R. A. 650); *Humphrey* v. *P. M. Assn.,* 50 Iowa, 607; *Dewey* v. *Toledo R. Co.,* 91 Mich. 351 (51 N. W. 1063).

In Morawetz, Corporations, Section 689, the author says: "After a contract entered into by a corporation has been performed by either of the contracting parties, the fact that the making of the contract involved an unauthorized exercise of corporate powers on the part of the company will not constitute a defense to an action brought by the party having performed the contract to recover compensation for a breach of the contract by the other party."

We find that the plaintiff made out a *prima facie* case that should have been submitted to the jury, and

that the trial court erred in sustaining the defendant's motion for a nonsuit.

The judgment of the court below is reversed and a new trial granted.                REVERSED.

MR. JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE MCNARY concur.

MR. CHIEF JUSTICE MCBRIDE not sitting.