Argued and submitted July 29, 2004, reversed and remanded for entry of judgment declaring defendant's equitable interest in property March 9, 2005

Barry SWENSON,
general partner of Green Valley Enterprises,
a California general partnership,
*Respondent,*

*v.*

E. R. "Max" MILLS,
*Appellant.*

00 CV 0456 ST; A120139

108 P3d 77

Jim Petersen argued the cause and filed the briefs for appellant.

James E. Mountain argued the cause for respondent. With him on the brief were Karla Alderman and Harrang Long Gary Rudnick, P.C.

Before Wollheim, Presiding Judge, and Haselton and Schuman, Judges.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

Defendant E. R. "Max" Mills, the assignee of a lease and option to purchase the subject property, appeals a judgment for plaintiff on plaintiff's claims (1) for a declaratory ruling that defendant is in default of the lease and (2) seeking possession of the leased property and damages for waste. Defendant contends on appeal that the trial court erred in entering judgment for plaintiff and in dismissing his counterclaim, asserting that, by virtue of a quitclaim deed to the property from the original lessee, his interest is that of an equitable mortgagor and can be terminated only by foreclosure subject to a right of redemption. He further asserts that the trial court erred in entering a supplemental judgment for plaintiff for attorney fees. On *de novo* review, ORS 19.415(3) (2001); *French v. Boese*, 50 Or App 369, 371, 623 P2d 1070, *rev den*, 291 Or 1 (1981), we agree with defendant and reverse.

Pyromid, Inc. (Pyromid) was in the business of manufacturing collapsible camping stoves. The subject property, a five-acre industrial complex, was the site of Pyromid's operations and was owned in trust by James Hait and Paul Hait, Pyromid's primary shareholders. The property was encumbered by a mortgage held by Bank of America. Pyromid had struggled financially over the years, and by 1997, the corporation's financial situation had become desperate. Paul Hait (Hait) determined that he needed to make a significant cash infusion to pay off Pyromid's creditors, including Bank of America, and to keep the company afloat. Hait had already extended himself financially to help the company, and he sought a loan for $600,000 to $700,000 from commercial lenders. At the same time, as an alternative to a loan, he listed the subject property for sale with a real estate broker for $1.4 million. The parties agree that, at the relevant time, the property had an estimated market value of $1.2 million.

On several occasions, Hait had sought financial help from plaintiff, a close friend and shareholder in Pyromid. Plaintiff is the general partner of Green Valley Enterprises (GVE), a partnership in the business of buying, holding, and selling real estate for investment. In 1996, plaintiff had

loaned Hait $10,000, secured by the subject property. In October 1997, Hait asked plaintiff to lend Pyramid $600,000 to $700,000, also to be secured by the property.

Plaintiff was interested in helping Hait; however, he did not want to be a lender. In a telephone conversation, plaintiff and Hait agreed to the basic terms of a transaction. Plaintiff would purchase the subject property for $600,000 and lease it back to Pyramid for a period of 10 years, giving Pyramid an option to repurchase the subject property during the lease term for $600,000 and a price escalation factor of four percent per year.

On October 27, 1997, the parties executed an earnest money agreement for the sale and lease back of the subject property. GVE was required to pay $100,000 into escrow and the balance of the $600,000 purchase price at closing. Pyramid would then lease back the property for $6,000 per month. The lease amount was determined based on a 12 percent rate of return on the $600,000 purchase price, not on the property's market lease value. The lease was "triple net," meaning that Pyramid would retain responsibility for taxes, insurance, and maintenance of the property. As a part of the transaction, four deeds were prepared transferring both Haits' interests in the property to Pyramid. Thus, Pyramid was the seller of the property, and it executed a statutory warranty deed to plaintiff on January 9, 1998. The parties continued to negotiate the details of the payout and the lease. Pyramid also continued to list the property for sale with the same broker who had been listing it. Both parties contemplated that, if the property did not sell, Pyramid would exercise the option to repurchase it.

Pursuant to the terms of the earnest money agreement, plaintiff placed $100,000 into escrow on October 30, 1997. Between February 3, 1998 and April 29, 1998, plaintiff made three additional payments toward the purchase price, directed to alleviating Pyramid's debt. On February 3, 1998, plaintiff made a $71,000 payment with instructions that the money be used to pay specific creditors. On March 5, 1998, plaintiff made a payment of $10,000. On April 29, 1998, plaintiff assumed the Bank of America mortgage in the amount of $393,352.04. The parties also agreed that the 1996

loan of $10,000 from plaintiff to Hait should be credited to the purchase price.

In May 1998, plaintiff and Pyromid executed a separate lease and purchase option agreement. Pyromid continued to use the property as before but did not make a single lease payment. The property continued to be listed for sale with the broker who had previously listed it but who had not been paid a commission for the sale to plaintiff. Plaintiff and Hait agreed that, if the subject property sold for more than $600,000, plaintiff and Pyromid would split the difference.

In March 1998, defendant had become interested in purchasing the property. Because plaintiff held title to the property, the transaction was structured as an assignment of Pyromid's lease option. The lease term was for 31 years in order to qualify as an Internal Revenue Code section 1031 exchange for federal tax purposes. Defendant agreed to pay Pyromid $600,000 for assignment of the lease option and to pay an additional $600,000 if and when he chose to exercise the option to purchase the property. The written agreement required defendant to pay $177,000 down and finance the balance of the lease option with a note to Pyromid for $423,000. The note would become due on defendant's exercise of the purchase option or if defendant did not exercise the purchase option but chose to remain as a long-term tenant. Defendant had the right to exercise the option to purchase the property within the first 10 years of the lease.

With plaintiff's consent, Pyromid assigned the lease of the property to defendant and also gave defendant a quit-claim deed. The lease agreement provided for payments of $6,000 per month and prohibited defendant from allowing a lien to attach to the property. In fact, Pyromid continued to occupy the property with its manufacturing facility but did not make any lease payments. Plaintiff could terminate the lease on default with 30 days' notice. The broker who had listed the property received a commission on the transaction.

Defendant leased the property for two years. Pyromid continued to occupy the property until December 1999. In 2000, plaintiff learned of a $10,000 construction lien on the property, and he terminated defendant's lease and filed these claims to regain possession and for damages for

unpaid rent and waste. Defendant then exercised his option to purchase the subject property and paid $600,000 into escrow. He contends that Hait's transaction with plaintiff, although drawn up as an outright sale, was really a loan of $600,000 secured by the property and that it gave rise to an equitable mortgage. Defendant asserts that, by virtue of the quitclaim deed from Pyromid, he stepped into Pyromid's shoes as an equitable mortgagee and that his interest can be terminated only through foreclosure.

We first address plaintiff's contention that, assuming that Pyromid's deed of the subject property to plaintiff conveyed a security interest rather than absolute title, only Pyromid, the debtor, is entitled to seek the relief of an equitable mortgage. In plaintiff's view, defendant cannot obtain a declaration that the agreement between plaintiff and Pyromid was an equitable mortgage because the factors that might have justified that equitable remedy as between plaintiff and Pyromid did not exist in the transaction between Pyromid and defendant. We reject the contention. A debtor's equitable right of redemption can be conveyed by quitclaim deed, which conveys "whatever title or interest, legal or equitable, the grantor may have in the described property on the date of the deed." ORS 93.865(2); *see Bailey v. Frazier*, 62 Or 142, 124 P 643 (1912); *Besser v. Hawthorn*, 3 Or 129, 133 (1869). We have found no authority indicating that the debtor under an equitable mortgage should not also be able to use a quitclaim deed to convey all its rights, title, and interest in the property, legal or equitable. By quitclaim deed, Hait, as president of Pyromid, assigned to defendant "all its right, title and interest to [a] leasehold interest * * * and to the land covered by such lease." We agree with defendant that, as Pyromid's successor, defendant acquired all of Pyromid's interests in the subject property. Accordingly, if Pyromid held an equitable interest in the subject property, then defendant succeeded to that interest, as well as to the equitable right of redemption.

We next consider the nature of Pyromid's interest and whether, despite the outright conveyance of the property to plaintiff by deed, the transaction was nonetheless a security agreement. There is a presumption that a deed absolute on its face is "what it purports to be unless and until proved

otherwise by clear and convincing evidence." *Fry v. D. H. Overmyer Co., Inc.*, 269 Or 281, 292, 525 P2d 140 (1974). The same rule is applicable to a sale and leaseback transaction. *Id*. If, however, it appears that the parties' intent was to convey and receive the property as security for the fulfillment of an obligation, then the form of the instrument becomes immaterial and the true nature of the transaction may be shown by parol evidence. *Umpqua Forest Ind. v. Neenah-Ore. Land Co.*, 188 Or 605, 614, 217 P2d 219 (1950). That question is determined based on a consideration of the whole transaction, by "the mutual intention of the parties *at the time the transaction was consummated*." *Blue River Sawmills et al v. Gates et al*, 225 Or 439, 446, 358 P2d 239 (1961) (emphasis in original).

■■ Factors that may be considered in determining the intent of the parties include:

> "(1) the situation of the parties including their business and social relationship, (2) price fixed in relation to the actual value of the property conveyed, (3) surrender of possession by grantor, (4) payment of taxes, (5) payment of rent, (6) liability by grantor to pay interest, (7) financial circumstances of the grantor, and (8) conduct of the parties before and after the transaction."

*French*, 50 Or App at 376. When a deed absolute in form is accompanied by an option to repurchase, the option does not of itself convert the transaction into a mortgage but weighs in favor of the existence of a mortgage. *Umpqua Forest Ind.*, 188 Or at 642; *Long v. Storms*, 50 Or App 39, 48, 622 P2d 731, *adh'd to as modified on recons*, 52 Or App 685, 629 P2d 827 (1981).

We consider the facts in this case. Plaintiff and Hait testified that they intended to *structure* the transaction as an outright sale, and the trial court found them both to be credible. As we have noted, however, the parties' intent as to the structure of the transaction is not determinative if, despite its outward appearance, factors indicate that the transaction should have the effect of an equitable mortgage.

On *de novo* review, these are the factors that weigh in favor of our conclusion that the transaction was, in fact, a security agreement: At the relevant time, Pyramid and Hait

were experiencing serious financial difficulty. Plaintiff and Hait were close personal friends, and plaintiff was strongly motivated to help Hait through the financial crisis and to help Pyramid succeed. The purchase price for the subject property was only half the property's market value. The general terms of the agreement were reached in a single telephone conversation between plaintiff and Hait and without the benefit of an appraisal. The broker listing the property received no commission for the sale. Pyramid retained possession of the property and continued in operation and had an obligation under the lease agreement to pay taxes and make lease payments of $6,000 per month. The lease amount was below the property's actual market lease value and was determined based on a 12 percent rate of return on plaintiff's investment. The sale was conditioned on Pyramid's option to repurchase the property during the lease on terms favorable to Pyramid, including a repurchase price the same as plaintiff's purchase price of $600,000, substantially below the property's market value. The parties contemplated that Pyramid would continue to list the subject property for sale and that the proceeds of any sale in excess of $600,000 would be shared between Pyramid and plaintiff.

Those facts lead us to conclude that defendant established, by clear and convincing evidence, that, although the plaintiff and Hait structured the transaction as an outright sale of the subject property, it was a security agreement, securing Pyramid's obligation to repay the $600,000 through lease payments or the repurchase of the property through the exercise of the option. As the grantee through the quitclaim deed of Pyramid's equitable interest in the property, defendant acquired equitable title to the property, including the equitable right to redeem, and his interest in the property can be terminated only through foreclosure. Accordingly, we reverse the trial court's judgments for plaintiff, including the supplemental judgment for attorney fees, and remand for entry of a judgment in favor of defendant on defendant's counterclaim seeking a declaration of defendant's equitable interest in the property.

Reversed and remanded for entry of judgment declaring defendant's equitable interest in property.