[Filed June 29, 1886.] [1]

## GEO. F. WELLS et al. *v.* MARCUS and MARGARET J. NEFF and JAS. H. BUDD.

EQUITY—ACCORD AND SATISFACTION—COMPROMISE.—Compromise of doubtful rights, or voluntary settlements between parties, when characterized by good faith and a full disclosure of all the facts, are favored by the courts. ⸳

SAME—MISTAKE.—Such settlements will not be disturbed for any ordinary mistake, either of law or fact, in the absence of conduct otherwise inequitable, since their very object is to settle all such possible errors without judicial controversy.

SAME.—It seems that a party claiming to set aside such a settlement must in any case restore any property or rights derived under it. He cannot repudiate the settlement, and at the same time hold on to the advantages it may have given him.

MULTNOMAH COUNTY.   Defendants Neff appeal.   Affirmed except as to costs.

This suit is to partition a tract of land known as the Neff Donation Land Claim.  The complaint is in the ordinary form, setting out the interests of the several owners as follows :

---

[1] Suspended upon an order allowing a rehearing until the present term.

In respondent Wells, four-ninths of whole claim, and six thirty-sixths of the Petty tract.

In respondents Whalley and Fechheimer, one-sixth of whole claim, an undivided twelve and a half acres in whole claim, and one-sixth of the Petty tract.

In respondent Page, one-sixth of the whole claim, less an undivided twelve and a half acres of whole claim.

In respondent Budd, two-ninths of whole claim, excepting the Petty tract, and five thirty-sixths of Petty tract.

In appellant Margaret J. Neff, a life estate for her natural life in respondent Budd's portion.

The complaint further alleged that the respective interests were so varied that the land could not be divided without injury to substantial rights of the respective parties to the suit, and that the interests of the parties would be advanced by sale of the property, and a *pro rata* division of the proceeds of such sale.

March 31st, 1883, appellant Margaret J. Neff filed her first answer, in which she claimed no other interest than that stated in the complaint; but alleged that the land could be partitioned by metes and bounds, and that a sale thereof would cause her irreparable injury.

May 5, 1883, a decree was made apportioning the land in accordance with the complaint, and appointing referees to make partition of the land.

Afterwards the appellants Marcus and Margaret J. Neff had an answer prepared, charging the respondent Budd with various fraudulent practices in obtaining the deeds from them upon which he based his claim of title, and that said deeds were without consideration; which answer was submitted to Budd May 26th, 1883. After some negotiation, a settlement was agreed upon between these parties, by which Budd released to the Neffs all of his interest in excess of fifty acres; the latter, in turn, conveyed to Budd the fifty acres, and, as Budd claims, also agreed to suppress said answer.

Two days later, Neffs applied to the court below to open up the decree previously entered, which, eventually, the court did,

and thereupon the Neffs filed an answer substantially the same as that above referred to. Budd answered, putting in issue the material allegations made by Neffs' pleading, and setting up the settlement above referred to.

Such additional facts as are material are stated in the opinion.

*Benton Killin*, for Wells.

*John W. Whalley*, for himself, and for Fechheimer and Page.

*Sidney Dell* and *Charles Gardner*, for the Appellants.

*Fred'k V. Holman*, for Respondent Budd.

LORD, J.—This is a suit in equity for the partition of certain lands known as the Marcus Neff Donation Land Claim, in which the plaintiffs and defendants were interested as tenants in common. Without adverting to much preliminary matter now unnecessary for the consideration of the case, it is sufficient to say that the object of the answer of the Neffs, and the evidence they produced to support it after issue joined, was to establish their equitable ownership to the respective portions of the land claimed by each and all the other parties to the suit, and to have the deeds held by them, respectively, to the same set aside and cancelled, and declared to be null and void. The cause was referred to a referee, to take the testimony and report the finding of facts and conclusions of law, which resulted adversely to the Neffs. Subsequently, upon the report of the referee coming up before the court below, on motions of the respondents to confirm, and the exceptions thereto of the appellants, the court, after argument and advisement, confirmed the report of the referee, and rendered the decree herein from which this appeal is taken. In the course of the argument of the appellant, this court being satisfied that no case was made against Whalley, Fechheimer and Page, the suit was dismissed as to them; but not being so satisfied as to the other respondents, ordered the argument to proceed as to them. The case is almost purely one of fact.

The record is quite voluminous, involving many and various transactions, covering a period of more than ten years last past. It would not be possible, without too much extending this opinion, to point out all the particular matter in detail upon which our conclusions rest; nor shall we attempt it. All that we propose to do is to state the result which the very able argument of counsel, together with our examination of the evidence, has enabled us to reach.

And first, as to the respondent Geo. F. Wells. His interest in the property comprised the interest in the Neff claim of George Neff and Mary A. Lousignont (Neff), children of Marcus and Margaret J. Neff, and the life interest of Margaret J. Neff. As to these interests, it is not disputed that the respondent Wells paid a valuable consideration to each of the parties of whom he made the purchase; nor are any of the parties of whom he made the purchase, except the appellant Margaret J. Neff, parties to the suit, or making any charges of unfairness or want of good faith in the several transactions. And the only inquiry in respect to the respondent Wells is, whether he was a *bona fide* purchaser.

The evidence shows that while Wells was negotiating with Mrs. Neff for her life lease, she knew that he was at the same time negotiating with George and Mary, for the purpose of purchasing their respective interests in the land, which they held by deeds from the appellants; and that his object in purchasing her interest was, in the event he concluded the bargain with George and Mary, to have the property free from that incumbrance, so as to make it available for the purposes of speculation and sale, and to enable him to give a clear title to purchasers. During all the time this negotiation was proceeding, and while thus understanding that Wells did not wish to purchase any of the different interests held by them, unless he could have a clear title, Mrs. Neff neither represented nor made any claim to the respective interests held by George and Mary; but, we think, by her acts and conduct, led him to believe that she had no such claim, and that the interests in the land of George and Mary were valid and *bona fide*. Nor do

we find any other circumstances calculated to put him on inquiry, or which impugn the good faith of his purchase. The consideration which he paid for the different interests amounted to nearly ten thousand dollars; and taking the testimony altogether we are of the opinion he made the purchase in good faith, and without any notice of any outstanding equities. The result is that the decree must be affirmed as to him.

We now come to the contention between the appellants and the respondent Budd. His interest in the land was derived from the appellants, by deed duly executed by them, the alleged consideration for which was services rendered as an attorney, and money advanced. This deed is claimed to be without consideration, and fraudulent. It appears that while the appellant resided in Stockton, Cal., where the respondent Budd then and now resides, the father of Margaret J. Neff died, leaving certain property to her children, and that upon her application, the respondent Budd was appointed their guardian. The names of these children were Nancy, George, and Mary. In May, 1875, Nancy became of age, and the respondent Budd, after having paid over and delivered to her all the property he had received, as the guardian of her estate, filed his account, and was, by a decree of the probate court, discharged from his duties and obligations as such guardian. Subsequently the appellants executed to their daughter, Nancy Neff, a deed to one-sixth of their interest in the donation land claim in Oregon. On the 14th day of February, 1877, Nancy Neff made a will, whereby she bequeathed and devised all her property to the respondent Budd; and on the 15th day of February, 1877, she died, leaving property in the city and county of San Francisco. And thereafter, in March, 1877, the said last will was duly admitted to probate under the laws of California, and by the probate court of said county. But no steps were ever taken to record such last will in Oregon, or other proceeding had to make it available against the property here. On March 18, 1878, the appellants executed a deed, for certain considerations alleged, to Mary Neff, George Neff, and the respondent Budd, to certain undivided interests in said do-

nation claim, in which a life lease was reserved for the benefit of Margaret J. Neff in the interests held by Mary Neff and the respondent Budd. This sufficiently states the interest which the respondent Budd held in the land.

Thus matters stood until this suit was instituted for the partition of the respective interests of the parties, when the claim made by the appellants was set up in the answer, to set aside the deeds held by the adverse parties to the suit. A great deal of testimony was taken in respect to the will of Nancy Neff, and to the matter of the alleged professional services and money advanced, which constituted the consideration for the deed to the respondent Budd. But the chief defense relied upon is a settlement in which all matters between the parties were fully adjusted and liquidated. The number of acres to which the respondent Budd would have been entitled by the partition was about sixty-seven. But this was subject to the life estate of Margaret J. Neff, appellant. By the settlement, the respondent Budd transferred by deed to the appellants all his interest in said claim, in excess of fifty acres thereof, which was to be and remain his property, free and released from the life lease of Mrs. Neff ; and at the same time as part of this transaction, the appellants by deed released and forever quit claimed to Budd all their right, title and interest, including the said life lease, to said fifty acres in said donation claim. And the referee found—which was confirmed by the court—that these deeds were executed freely and voluntarily by each of the parties therein named, and that the deed from the appellants to respondent Budd was not obtained by fraud or misrepresentation.

The evidence shows that the will in favor of the respondent Budd (whatever the rights to which he may have been entitled under it), and all other matters of difference between the parties, were included in this settlement. In a word, that it was intended to be a full and complete settlement of all differences and questions of property rights between them. It is claimed, however, that the appellants were led into this settlement by misrepresentation in respect to the will.

There is no doubt but that compromises of doubtful rights, or voluntary settlements between parties, which are characterized by good faith and a full disclosure of all the facts, are favored by the courts. Mr. Pomeroy says : " Voluntary settlements are so favored, that if a doubt or dispute exists between the parties with respect to their rights, and all have the same knowledge, or means of obtaining knowledge, concerning the circumstances involving these rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they thus voluntarily enter must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by them in their agreement may not be that which the court would have decreed, had the controversy been brought before it for decision. Of course, there must not only be no misrepresentation, imposition or concealment; there must also be a full disclosure of all material facts within the knowledge of the parties, whether demanded or not by the others. In the words of a distinguished judge : ' There must not only be good faith and honest intention, but full disclosure ; and without full disclosure, honest intention is not sufficient.' If these requisites of good faith exist, it is not necessary that the dispute should be concerning a question really doubtful, if the parties *bona fide* consider it so ; it is enough that there is a question between them to be settled by their compromise." Pomeroy Eq. Jur., Sec. 850. The evidence shows that after the answer for the appellants was drawn, the leading counsel, Mr. Dell, sought and procured an interview with the respondent Budd, and made known the contents to him, for the purpose, it would seem, of affording Budd an opportunity, if he desired it, to effect a settlement without litigation. The result of this interview was an agreement that the parties should meet at Dell's office at 4 o'clock, when all matters of difference could be submitted and discussed, with a view to an amicable and satisfactory settlement. At or about the time appointed, the appellants were present, with their attorney Mr. Dell, and the respondent, who is also a lawyer, with his attorney Judge Wood-

ward; when, after considerable discussion, a satisfactory arrangement was effected, which resulted in the interchange of deeds as above stated. The testimony in respect to these interviews, what was said and what took place as heard and seen, is fully set forth in the record, as testified to by those who were present. In some respects there is a conflict in the testimony, probably more particularly as to what occurred and what was the understanding at the first interview. But this was more of a preliminary character, and not irreconcilable with the after result. As Mr. Dell had prepared the answer of the appellants, we must suppose that he was conversant with the facts by which it was expected to be sustained; and as to the will, that he knew the law as to its validity as well as Budd, and was, therefore, well equipped to advise and protect his clients, and not liable to accede to or accept any settlement that did not secure a just and proper recognition of their rights and interests. The evidence shows, too, that Budd had never attempted to perfect his rights under the will, so far as the property in this jurisdiction was concerned; and he seems to have referred to the matter more to show that he had a further and another distinct claim to a portion of the property, quite liable, it is true, to be contested whenever he should attempt to establish such rights, but which he was willing to throw in and abandon, in order to facilitate and bring about a full and complete adjustment and settlement of all matters in dispute, and to prevent litigation. And where parties meet, as here, for the purposes of a settlement, and to avoid litigation, courts of equity are strongly inclined to favor and uphold such compromises or settlements, when effected. And it is said that they will not be disturbed for any ordinary mistake, either of law or fact, in the absence of conduct otherwise inequitable, since their very object is to settle all such possible errors without judicial controversy. Looking at much matter which has come into this record, in the absence of the settlement, it probably would wear a different aspect, and compel us to regard it in a different light than we do now, in adjusting the rights and equities of the parties. But it seems to us that one of the principal objects which in-

duced the respondent Budd to compromise and settle, and put
an end to all controversy, was the exclusion of this very mat-
ter, which otherwise would necessarily be involved in the case.
In view of all the facts, we are inclined to think that the settle-
ment must be upheld, and that the decree of the court below
must be affirmed in all matters and things, except that the
respondent Budd shall not be entitled to recover costs and dis-
bursements in either court.

WALDO, C. J., was of opinion that the will of Nancy Neff,
of Feb. 15, 1877, was void by reason of the nonage of the testa-
trix ; and that the extent to which this fact might affect the
decree as to the defendant Budd, not having been considered
by the counsel or the court, further argument should be had
upon the point.

Upon reargument, the following opinion was delivered No-
vember 2, 1886 :

PER CURIAM.—The opinion heretofore filed in this cause
disposed of every question presented ; but in a petition filed for
rehearing by counsel for the appellants, it was insisted that the
court had not given full effect to the evidence in their favor,
touching the alleged settlement with Budd, referred to in their
answer.  For the purpose of hearing further argument on this
point, a rehearing was ordered, and the cause having been
again argued, as to whether Budd was guilty of fraud in pro-
curing that settlement, we shall now briefly state our conclu-
sions thereon.

The settlement occurred in the office of Mr. Dell, attorney
for the appellants, on May 26th, 1883 ; and at the time the
same was concluded and the deeds exchanged, there were pres-
ent the defendant and J. H. Budd, Judge Woodward, Marcus
Neff, Margaret J. Neff and Sidney Dell.  By the terms of that
settlement, Budd was to have 50 acres of the land in contro-
versy, under the deed of March 18th, 1878, the same to be dis-
charged from a life estate of Margaret J. Neff therein, and to
be set apart to him in the then pending partition suit ; and he

was to release and convey to Margaret J. Neff all of his interest, if any, in the residue of the land in dispute ; and the necessary deeds were executed and delivered at the time, to carry the same into effect.  By the deed of March 18th, 1878, referred to, Marcus Neff and Margaret J. Neff had conveyed to the respondent Budd, and to Mary A. Neff and George Neff, all their interest in the Neff Donation Land Claim.  For the purpose of setting this settlement aside, it is attacked by the answer of Marcus Neff and Margaret J. Neff, for fraud in its procurement.  The fraud consisted in the claim of Budd to one-sixth interest in the Neff Donation Land Claim, under and by virtue of a will of Nancy Neff, deceased, made in favor of Budd. It is also claimed that the will was invalid ; that Budd knew it at the time of the settlement, and that the respondents did not know it; and that Budd omitted to tell the facts showing its invalidity at the time of the settlement.  The will of Nancy Neff was filed for probate in the Superior Court of the City and County of San Francisco, on the 13th day of March, 1877, and such proceedings appear to have been thereafter regularly taken in the matter, until on the 29th day of March, 1877, when said will was duly proven in said court, and adjudged to be the last will of Nancy Neff, deceased.  These facts fully appear from a certified copy of the proceedings had in said matter, now before us.  It does not appear that this will has been probated in this state, but with this record and judgment before us, we cannot say that it is not the will of Nancy Neff, deceased.  It is the judicial record of a sister state, and it is entitled to full faith and credit under the constitution and laws of the United States.  The validity of a will executed in another state cannot be tried in this collateral manner.  It has become a judicial record in the state where it was proven and filed, and it must receive full credit here.

But it is charged that this will was forged, and that the respondent Budd was a party to the forgery.  This was stated in the argument by counsel for the Neffs ; but we have sought diligently for evidence to support it—it is not in the record.

Presumptively, all of the transactions of these parties were fair and honest, and the settlement in question was fairly made. Whoever alleges otherwise, must support that allegation by a preponderance of evidence. Fraud is never presumed. Taking all that is testified to by Dell and Budd, at the 12 o'clock meeting in Dell's office, when Dell and Budd only were present, and all that occurred at the 4 o'clock meeting at the same place, when Judge Woodward, Marcus Neff, and Margaret J. Neff were also present, and when the settlement in question was finally consummated, and we fail to find in it any evidence whatever of fraud on the part of Budd. Of course, Mr. Dell has given his version of it ; but we would hardly be justified in accepting his statements without any qualification, and rejecting the others. The Neffs must produce evidence which is stronger, more convincing to the mind, than Budd; and, if they cannot do this, under well settled principles of law, they must fail. And this, in our judgment, they have failed to do.

There is one other question that appears upon the face of the answers of the Neffs, and that is, they have not tendered back to Budd a deed for any interest they may have derived from him in the Neff claim by the terms of the settlement. They could not repudiate the settlement, and at the same time hold on to advantages it may have given them. "He who seeks equity must do equity." Having determined that the settlement is unimpeached, we decide this case solely upon that ground, though the objection last stated would be alike fatal to the appellants. A party prevailing in this court is entitled to his costs, unless for special equitable reasons growing out of the case we should order otherwise, and this, we think, we ought not to do in this case.

The decree of the court below will be affirmed with costs, and it is so ordered.