Argued January 30, affirmed as to J. M. Day, reversed as to Wilhelmina Day, April 3, rehearing denied April 17, 1923.

## KLUSSMAN *v.* DAY ET UX.

(213 Pac. 787; 214 Pac. 348.)

**Husband and Wife—Mortgages—Evidence Held to Authorize Cancellation of Mortgage as to Mortgagor Wife, but not as to Mortgagor Husband.**

1. In a suit to foreclose a mortgage executed by husband and wife to cover a shortage under a contract whereby plaintiff furnished goods to husband for sale on commission, evidence *held* insufficient to show that husband acted under coercion or duress, but sufficient to show that wife's signature was secured under circumstances requiring cancellation of the mortgage as to her.

Compromise and Settlement—Agreements Highly Favored and not Disturbed for Ordinary Mistake.

2.   Compromise and settlement agreements are highly favored by the courts and cannot be avoided for ordinary mistakes either of law or of fact, in the absence of a clear showing of fraud, misrepresentation, concealment, or of a misleading incident, even though the disposition made by the parties in their agreement differs from that which would have been reached by the court, had they resorted to litigation.

Contracts—Valid Only Where Parties Voluntarily Assent to All Terms.

3.   It is essential to the existence of a valid contract that all of the parties freely and voluntarily assent to all of the terms of the contract.

### ON PETITION FOR REHEARING.

Trial—Verdict in Foreclosure as to Duress of Mortgagor Held Advisory Only.

4.   In a suit to foreclose a mortgage in which the court called a jury to determine an issue as to whether a defendant's signature to the mortgage had been procured by duress, the verdict of the jury was advisory only.

From Lane: G. F. SKIPWORTH, Judge.

Department 2.

For appellants there was a brief over the names of *Messrs. Williams & Bean,* with an oral argument by *Mr. John M. Williams.*

For respondents there was a brief over the names of *Mr. Fred E. Smith* and *Mr. L. L. Ray,* with an oral argument by *Mr. Smith.*

AFFIRMED AS TO J. M. DAY.   REVERSED AS TO WILHELMINA DAY.   REHEARING DENIED.

McCOURT, J.—1. Defendants J. M. Day and Wilhelmina Day are husband and wife.   Plaintiff brought this suit against the defendants to foreclose a mortgage upon a small farm, the title to which is in de-

2.   Mistake as to law as ground for annulment of compromise, see note in **Ann. Cas.** 1916D, 347.

fendant J. M. Day, and to obtain a sale thereof to satisfy a promissory note purporting to be secured by the mortgage mentioned. The mortgage and note in suit bear the signatures of defendants, and each instrument on the face thereof appears to have been regularly executed by the defendants. The real property described in the mortgage is the home of defendants.

As a defense to the suit defendants pleaded and offered proof that they were induced to execute the mortgage, and the note it purports to secure, by duress consisting of threats of criminal prosecution and imprisonment, and further that the attorney for plaintiff, in the presence of the latter, obtained the signature of defendant Wilhelmina Day on the note and also upon the mortgage by holding her arm and guiding her hand while she was in a state of mental and physical collapse, produced by threats and coercion employed by plaintiff, and which deprived her of the capacity to act understandingly and of her own free will.

The court called a jury to determine the issue, made by the pleadings, of whether defendants signed and delivered the note and mortgage in question under duress. The jury answered the question submitted to them in the negative, and the court adopted the verdict of the jury, and found that the defendants were not acting under duress when they made, executed and delivered the promissory note and mortgage in suit.

The court further found that the parties had an accounting and settlement of their differences, in which they agreed that the amount due plaintiff from defendant J. M. Day should be computed and settled in the sum of $2,043, and that the note and mortgage in suit were given in evidence of, and to

secure, that indebtedness. Upon those findings the court entered a decree, awarding judgment against the defendants and in favor of plaintiff, and directing the foreclosure of the mortgage, and sale of the premises described therein, for the satisfaction of the amount of such judgment. Defendants appeal from that decree.

A summary of the evidence introduced at the trial follows. At the time of the transactions under examination in this case, J. M. Day was about sixty-five years of age, and Wilhelmina Day was somewhat younger. Prior to June, 1918, J. M. Day had followed the single vocation of a farmer. Mrs. Day, before her marriage in 1913 to J. M. Day, had acquired some experience as a clerk in the handling and selling of merchandise.

Prior to the seventh day of June, 1918, Day was appointed postmaster at Alvadore, Lane County, Oregon; on that date he entered into a contract with plaintiff, by the terms of which plaintiff agreed to furnish and maintain a stock of groceries, flour and feed, to be placed and kept in Day's store building, in which the latter conducted the postoffice, said merchandise there to be handled and sold by Day at retail prices fixed by plaintiff, and upon commissions based upon such sale prices. Plaintiff invoiced the goods to Day at retail prices, and charged him therewith accordingly.

The contract provided for a report of sales and settlement in money between the parties whenever the proceeds of such sales on hand equaled $100, and at least once every thirty days, and that defendant "at all times shall have either the money or the goods herein mentioned on hand."

The arrangement provided by the contract was carried out by the parties, and continued until Feb-

ruary 26, 1920. Day carried on the business of selling the merchandise supplied to him by plaintiff in connection with his duties as postmaster. By virtue of her previous experience, Mrs. Day took a large part in looking after the store. She kept the accounts and waited on most of the customers. The store was kept open from early in the morning until late in the evening—sometimes from 5 o'clock in the morning until 9 o'clock, or after, in the evening.

The proceeds of sales made by the defendants amounted in the aggregate to about $15,500, upon which they earned, and were paid, commissions not in excess of $1,550.

An inventory taken by Mrs. Day in January, 1920, indicated that there was $2,100 less merchandise on hand than the record of sales showed should have been in possession of the defendants. Mrs. Day reported the matter to plaintiff, who employed one S. L. Bond, experienced in merchandising, and other clerical assistance, and reinventoried the stock, with the result that substantially the same shortage as that found by Mrs. Day, appeared to exist. Neither the plaintiff nor the defendants were able to account for the discrepancy beyond inconsiderable losses resulting from measuring and weighing out in small quantities, commodities that were received in bulk. Defendants insisted that the apparent shortage was due to some mistake or error that had not been discovered. Plaintiff diligently exerted himself to discover and account for the apparent shortage, but at the same time took the position that it was incumbent upon defendants to account for the shortage of merchandise, and that if one existed, to make the same good in cash. Plaintiff, in the course of the investigation, expressed to J. M. Day the suspicion that Mrs. Day had secretly disposed of the goods,

and intimated that there might be some criminal liability involved in the transaction. It is upon the suspicion thus voiced by plaintiff, that defendants relied for proof of the allegations in their answer that they were threatened by plaintiff with criminal prosecution and imprisonment. There does not appear to be any facts or circumstances in the case justifying the suspicion mentioned.

Defendants accepted as correct the assumption of plaintiff that J. M. Day, under the terms of his contract with plaintiff, was liable at all events for any shortage of merchandise.

Defendants had expected that the arrangement with plaintiff would furnish them a fair remuneration for the time and services rendered in handling and selling the merchandise. They were now confronted with a claim for a loss of merchandise amounting to more than the commissions they had earned, plus the salary of J. M. Day as postmaster, for the whole period the arrangement had continued. They were very much shocked, disturbed and distressed by this stroke of adversity, and were overwhelmed with agitation, due to their inability to account for the discrepancy, and with fear produced by the vague hints of criminal liability that had been thrown out by plaintiff.

In this situation, on February 26, 1920, J. M. Day, at the request of plaintiff, went to the office of the latter at Irving, Lane County, Oregon, for the purpose of discussing a settlement and adjustment of the matter. There were present, besides plaintiff and defendant J. M. Day, S. L. Bond, who had assisted in taking an invoice, and who had examined the records of both plaintiff and the defendants. At that meeting plaintiff asserted a claim of about $2,200. After some discussion, a settlement was agreed upon between plaintiff and Day, by which Day agreed that his indebted-

ness to plaintiff, on account of the alleged shortage, was $2,000. Plaintiff agreed to accept that sum in settlement, and Day agreed to pay the same. Thereupon a note, payable upon demand, was prepared and freely signed by Day. The note so executed provided for the payment of $2,043, which included, in addition to the sum of $2,000 agreed upon in settlement, the sum of $43 due upon a note previously given to plaintiff.

The following day plaintiff sent his attorney to the place of business of defendants, who requested defendants to execute a note similar to the one signed by Day, as above stated, together with a mortgage upon the home of defendants as security therefor, which the attorney had prepared. The attorney was unable to persuade Mrs. Day to sign the note and mortgage, and called in the assistance of plaintiff, and together they entreated and importuned Mrs. Day, and argued with her for something like two hours, endeavoring to persuade her to sign the instruments, and finally at the end of that time, without yielding her assent, she swooned.

Mrs. Day, having partially revived from the state of unconsciousness produced by the fainting spell mentioned, was in a short time able to sit up, with the assistance of plaintiff's attorney, who thereupon while supporting her, held her arm and guided her hand, thereby producing her signatures upon the note and mortgage. Day, who had been a witness to the efforts exerted to secure the signatures of Mrs. Day, thereupon signed the note and mortgage.

The evidence, of which the foregoing is the substance, wholly fails to establish that plaintiff coerced defendants to execute the note and mortgage in suit by threats of criminal prosecution or imprisonment. The reference, if any, made by plaintiff to criminal

prosecution or imprisonment, consisted of vague hints, insufficient to arouse in the defendants any substantial fears of criminal prosecution or imprisonment, and did not amount to technical legal duress: *Guinn* v. *Sumpter Valley R. R. Co.,* 63 Or. 368, 372 (127 Pac. 987); *Baldwin Co.* v. *Savage,* 81 Or. 379, 387 (159 Pac. 80); *Cram* v. *Powell,* 100 Or. 708, 718 (197 Pac. 280).

Clearly, the defendant J. M. Day is not entitled to be relieved from the note and mortgage or the compromise agreement made with plaintiff, upon the ground of duress or undue influence. The evidence shows that while Day was greatly distressed upon being confronted with the unexpected claim asserted by plaintiff, he did not seek to evade liability; in the absence of ability to pay the claim, he was willing to secure its payment so far as he was able, and to that end, he freely, though regretfully, agreed to a settlement, and executed the note and mortgage.

Neither can defendant J. M. Day be relieved from the compromise agreement, upon the claim set forth in his answer and briefs, that he entered into the same upon the mistaken supposition that he was liable to plaintiff upon the claim asserted by the latter.

2. Compromise and settlement agreements cannot be avoided for any ordinary mistake, either of law or of fact; such agreements are highly favored by the courts, and they will not be disturbed, in the absence of a clear showing of fraud, misrepresentation, concealment or of a misleading incident, even though the disposition made by the parties in their agreement differs from that which would have been reached by the court, had they resorted to the hazard of litigation: *Wells* v. *Neff,* 14 Or. 66 (12 Pac. 84, 88); *Butson* v. *Misz,* 81 Or. 607 (160 Pac. 530); Pomeroy, Eq. Juris. (4 ed.), § 849.

The decree appealed from must be affirmed as to the defendant J. M. Day.

The case of Wilhelmina Day, however, differs in some material particulars from that of her husband, and requires a separate consideration. The court did not submit to the jury the specific question as to whether the signatures of defendant Wilhelmina Day to the note and mortgage, obtained under the facts and circumstances shown by the evidence, amounted to duress, and the court made no specific finding on that question.

Moreover, the relation of Mrs. Day to the indebtedness, for which plaintiff desired to obtain security, was radically different from that of her husband. She was not a party to the contract, out of which the claim of plaintiff arose; she was not responsible for the loss of the goods, in the absence of evidence showing that she was guilty of a conversion of the same to her own use. She was not a party to, and had not agreed to, the settlement effected between Day and plaintiff upon the preceding day. She had no opportunity to obtain advice in the matter; no previous request had been made that she become liable to plaintiff for the indebtedness of her husband. By the demand that she sign the note and mortgage, she was required to become individually liable for $2,043 on an indebtedness, for the payment of which she was in no way liable, and to engage that the same should be paid upon demand. During the entire interview, and up to the time she swooned, she had objected to executing the note and mortgage. It is conceded that her refusal to sign the note continued up until that time, and again was manifested when the request of plaintiff's attorney that she sign the note was repeated, and a pen offered her for that purpose; and it is further conceded that she was then in such a state of physical agitation that she

was unable to write, and that she could not sit up without being supported, and that not until a pen was placed in her hand, and her arm and hand held and guided, was it possible to secure her signatures to the instruments.

Doubtless, the unsteadiness and agitation of her hand and her manifest physical weakness, were indicative of a like agitation and weakness and confusion of mind. Mrs. Day testified that she did not remember signing the papers or that plaintiff's attorney held her arm and guided her hand while she did so.

There is no evidence in the record that Mrs. Day consented to execute the note and mortgage, or that she executed either of those instruments freely or voluntarily. On the other hand, the evidence clearly shows that she withheld her assent thereto as long as she was able to exert her will or act understandingly. Under such circumstances her signatures placed upon the note and mortgage by the force and guidance of plaintiff's attorney, had no efficacy.

3. It is essential to the existence of a valid contract that all of the parties freely and voluntarily assent to all of the terms of the contract: 13 C. J. 263; 6 R. C. L. 592, 599, 638.

Where one of the parties does not really agree to a proposed contract, but the other party thereto obtains the formal assent of the resisting party to the undertaking by force or the exercise of undue influence that destroys free agency, no contract is created: 9 R. C. L. 716, 717, 723, and cases cited in notes; *Royal* v. *Goss,* 154 Ala. 117, 121 (45 South. 231); *Fairbanks* v. *Snow,* 145 Mass. 153 (13 N. E. 596, 1 Am. St. Rep. 446); *Dumont* v. *Dumont,* 46 N. J. Eq. 223 (19 Atl. 467).

"If a man by force compels another to go through certain indications of assent, as by taking his hand

and forcibly guiding it, there is no real expresion of mutual assent for the act is not that of him whose hand was guided. He is a mere automaton.'' Williston on Contracts, § 1622.

The signatures of Mrs. Day upon the note and mortgage, in the light of the undisputed testimony, are not evidence of her assent to the obligation of those instruments. The act of placing the signatures of Wilhelmina Day upon the instruments in question was not her act, but that of plaintiff's attorney, and she is entitled to be relieved from her apparent liability thereon.

The decree of the Circuit Court is reversed as to defendant Wilhelmina Day, and affirmed as to defendant J. M. Day. The decree of this court will provide for judgment against defendant J. M. Day and foreclosure and sale of the interest of the latter in the premises described in the mortgage, in accordance with the terms of the decree appealed from, and further that the note and mortgage described in plaintiff's complaint be canceled and annulled as to defendant Wilhelmina Day, and that plaintiff's complaint be dismissed as to her. No party shall recover costs upon this appeal.

REVERSED AS TO WILHELMINA DAY. AFFIRMED AS TO J. M. DAY. REHEARING DENIED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.

Rehearing denied April 17, 1923.

ON PETITION FOR REHEARING.

(214 Pac. 348.)

Department 2.

For the petition, *Mr. Fred E. Smith* and *Mr. L. L. Ray.*

*Contra, Messrs. Williams & Bean.*

McCOURT, J.—Counsel for plaintiff, in a petition for rehearing, urges that the decision of this court upon the facts ignores the verdict of the jury, expressing a contrary finding, and is against the weight of the evidence.

4. The verdict of the jury was advisory only. We are satisfied that the conclusion we have heretofore reached is correct, even though it be conceded that the verdict of the jury comprehended the matters of fact upon which the reversal of the decree as to Wilhelmina Day is based.

We gather from the petition for rehearing that counsel for plaintiff regards the result declared in our opinion, or the language employed in expressing the same, as a reflection upon his professional integrity.

We did not intend to impugn the motives or the conduct of counsel. It is manifest that counsel acted in good faith, and that he honestly believed that he had obtained the valid assent of Wilhelmina Day to the note and mortgage in suit. But the fact that counsel was actuated by good faith does not supply the absence of the free and voluntary assent of Mrs.

Day, which was essential to render her liable upon the note and mortgage.

The decision of the court conflicts with the opinion of counsel, formed at the time the transactions occurred, but does not imply abuse of professional obligation on his part.

It is simply a case in which the zeal of counsel to serve his client faithfully, efficiently and expeditiously prevented and disqualified him from viewing the situation from the standpoint of the judicial tribunal, to which the legal effect of the transactions was later brought for decision.

Petition for rehearing denied.

REHEARING DENIED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.

