Argued December 23, 1926, affirmed February 8, rehearing denied
March 8, 1927.

# WILLIAM A. MOORE ET AL. *v.* ANNA L. MOORE.

### (252 Pac. 964.)

**Wills—Party, Acquiescing in Construction of Ambiguous Will as
Creating Tenancy in Common, cannot Assert Outstanding In-
terest After Sale of Interest.**

1. Where parties interested in realty involved, in suit to quiet
title, construed ambiguous provisions of codicil to make children
tenants in common, and defendant sold her portion, equity would
accept parties' construction of will and not permit defendant to
claim outstanding interest after sale of what defendant believed was
her entire interest for valuable consideration.

**Wills—Will Construction by Interested Parties, While not Control-
ling, is Persuasive, if Equitable and Acquiesced in for Many
Years.**

2. While construction given will by interested parties is not
controlling, it is persuasive, where it is just and equitable and has
been acquiesced in for many years.

---

Compromise and Settlement, 12 **C. J.**, p. 362, n. 87.
Descent and Distribution, 18 **C. J.**, p. 829, n. 21.
Wills, 40 **Cyc.**, p. 1421, n. 70, p. 1427, n. 3, 6.

From Wasco: FRED W. WILSON, Judge.

Department 2.

### AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the name of
*Messrs. Huntington, Wilson & Huntington,* with an
oral argument by *Mr. B. S. Huntington.*

For respondents there was a brief and oral argu-
ment by *Mr. Francis V. Galloway.*

BELT, J.—This is a suit to quiet title to 356.49
acres of land in Wasco County. The defendant,
Anna L. Moore, asserts that she is the owner in fee
of an undivided 1–64 interest in the property in ques-

tion. The decision of the case hinges primarily upon the construction of the will and codicil of Jones Whitney, deceased. In November, 1876, Whitney died leaving surviving him as his only heirs his widow and his daughter, Sarah A. Moore, who had eight children, including plaintiffs and the defendant. In August, 1871, Whitney executed a will, the material portions of which are as follows:

"I then order and bequeath that Anna, my wife, in case she survive me, have during her life all of the rents and profits of the following real estate owned by me: (Description); and at her death all lands and personal property remaining shall go to and belong solely to my daughter Sarah Moore and the heirs of her body. And in the event that my wife do not survive me then all of said personal property remaining and all real property shall at my death go to and belong solely to my said daughter and the heirs of her body.

"And I hereby ordain that the real estate now owned by me (Description of land not involved here) shall go to and be at my death the property of my said daughter Sarah Moore and her heirs * * ."

On May 20, 1876, the following codicil to the above will was executed:

" * * I hereby desire to and do change my said former will in this:

"1st. That after the death of my wife Anna Whitney, I request that the profits and income coming from my estate shall go to the equal education of the children of my only daughter Sarah Moore, or so much thereof as shall be required to educate them in the common and higher English branches.

"2nd. That I request that my said wife, Anna Whitney shall during her life time, appoint a suitable person to act as trustee and to have charge of my said estate after the death and who shall be au-

121 Or.—4

thorized to carry out the provisions of my last will and testament, including this codicil.

"3rd. That I desire that if at any time after the death of my wife, Anna Whitney, my said daughter, Sarah Moore should need any assistance from my said estate I request and order that she shall be furnished from my said estate with sufficient means to enable her to live in a comfortable manner during her life.

"4th. That I desire and request that after the death of my said wife Anna Whitney as the children of my said daughter Sarah Moore become of age they shall each receive their proportions of my said estate share and share alike. * * *"

It is conceded that Anna Whitney, the widow, under the will had a life estate and that such terminated on her death in 1905. Nathaniel Moore, one of the children of Sarah A. Moore, was a bachelor who died intestate, June 16, 1898, leaving surviving him as his only heirs, his mother and his seven brothers and sisters. Under the law of descent and distribution of property at that time his interest in the property involved was inherited by his mother and his brothers and sisters in equal shares: Section 5577, Bellinger & Cotton Code, subd. 3.

It is the contention of plaintiffs that, under the will and codicil, Sarah Moore and her eight children were tenants in common of the property described in the complaint. Under that construction, the defendant Anna Moore would have had an undivided 1/9 interest plus 1/8 of Nathaniel Moore's 1/9 interest, which equals a 1/8 interest in the property. If this construction of the will and codicil is correct, defendant concedes that she has no title to the property in controversy as, on January 28, 1922, she con-

veyed her undivided 1/8 interest to the plaintiff Garfield C. Moore.

It is the theory of defendant that Sarah A. Moore, under the will and codicil, had only a qualified life estate in the property in question, with remainder over to her eight children. In other words, she asserts that each of the children had an undivided 1/8 interest in the property,—not an undivided 1/9 interest. Upon the death of Nathaniel Moore, defendant claims that she inherited from him 1/8 of his undivided 1/8 interest or a 1/64 interest in the property. After having conveyed a 1/8 interest, she still claims to be owner in fee of an undivided 1/64 interest.

Did Sarah A. Moore have, as counsel for appellant contends, a "qualified or conditional life estate" or was she a tenant in common with her children? If we looked solely to the will, and not the codicil, there would be no hesitancy, on the authority of *Rowland et al.* v. *Warren,* 10 Or. 130, in holding that a devise to "Sarah A. Moore and the heirs of her body" vested in her an estate in fee simple. In the case last cited, testator said:

"I further will and do give and bequeath to my youngest daughter Mary E. Hembree—(description of property)—to her and her body heirs forever."

This court, in determining the kind and character of estate devised, said:

"It follows that Mary E. Hembree took either a fee simple or a fee simple conditional, defeasible on the contingency of her dying without leaving children, with a limitation over by executory devise. As such contingency did not happen, she held the whole estate, and the sale of the estate, under the judgment against her, conveyed a good fee simple title to the purchaser."

*Rowland et al.* v. *Warren, supra,* has been cited with approval in *Bilyeu* v. *Crouch,* 96 Or. 66 (189 Pac. 222), and in *Imbrie* v. *Hartrampf,* 100 Or. 589 (198 Pac. 521), and the rule therein announced may well be considered the settled law in this state. It is unnecessary to review numerous cases cited from other jurisdictions. The cases cannot be reconciled. The books already have too much confusion on the subject. Why add to it?

The will and the codicil must be read together to ascertain the testator's intention. The first instrument is skillfully drawn. It clearly and definitely vests a fee-simple estate in Sarah A. Moore. To what extent was such estate reduced or restricted by virtue of the codicil? It is certain that Sarah A. Moore no longer was owner in fee of the property in controversy. Was her estate cut down to a life interest or was she made a tenant in common with her eight children? It is difficult to determine from the uncertain and ambiguous language of the codicil what the testator intended relative to the respective rights of the mother and her children in the property in question. Lawyers and judges might well differ on the matter. At the time of the execution of the codicil, May 20, 1876, five of testator's grandchildren were living. Anna L. Moore, the defendant, is the oldest of Sarah A. Moore's children and was, at the time of her grandfather's death in 1876, twelve years of age. The youngest of the grandchildren, Lena Walther, was not born until 1884.

If we view the will and codicil in the light of appellant's contention, Sarah A. Moore, the mother of eight children and the only daughter of the testator, had indeed a very limited and restricted interest in the property in dispute. The rents and profits of

the land were to be used for the education of the grandchildren who, when they became of age, were "to receive their proportions" of the estate "share and share alike." This is inconsistent with the idea of a life estate. It is evident that the grandfather was solicitous about the welfare of his grandchildren, and it is improbable that he would be niggardly with his only daughter, the mother of children of whom he was so fond. Especially is this true in view of the fee-simple estate which he had previously devised. The conclusion that the testator intended that his daughter and her children should share equally in this property is at least more in keeping with equity and justice.

Let us consider the construction given the will and codicil by the interested parties. What did they consider their respective interests to be? When Anna Whitney died and her life estate terminated, Sarah A. Moore assumed ownership of the property and collected the rents and profits thereof. Her son, Garfield Moore, took possession as her tenant and ever since has remained in possession. Dissension arose among some of the heirs, in which the defendant, Anna Moore, took a leading part, as to their rights under the will and codicil, and particularly as to the rents and profits. This controversy between the mother and some of her children finally culminated in the following contract:

"THIS AGREEMENT made and entered into this 12th day of June, 1917, by and between Sarah A. Moore, sole heir at law of Nathaniel P. Moore, deceased, Homer W. Moore, Anna L. Moore, Chauncey H. Moore, William A. Moore, Vivian E. Moore, Garfield C. Moore and Lena L. Walther, all heirs at law and legatees under the Last Will and Testament of Jones Whitney, deceased, hereinafter designated as the par-

ties of the first part, and Venz Bauer, of The Dalles, Oregon, hereinafter designated as the party of the second part, WITNESSETH:

"That WHEREAS, the *parties of the first part are all owners as tenants in common,* each owning an undivided one-eighth (1/8) *interest under the provisions of the Last Will and Testament of Jones Whitney, deceased,* of the following described real property, situated in Wasco County, Oregon, to-wit: (Describing property in controversy and other property):

"AND WHEREAS, some controversy has existed between some of the parties of the first part concerning the conduct and management of said real property, and the rents, issues and profits arising therefrom; and

"WHEREAS, it is desirous that said controversy be settled, and that the management of said property be placed in the hands of some one other than any one of the parties of the first part.

"Now THEREFORE, in consideration of the premises, and for the purpose of settling said controversy, the parties of the first part agree among themselves and with the party of the second part, that all their hereinbefore described real property, and all of the real property owned by the parties of the first part as heirs at law of Jones Whitney, deceased, shall be turned over and delivered to the party of the second part to manage and conduct for the period of One (1) year commencing with the date hereof and ending on the 12th day of June, 1918. * * "

The above agreement was continued from year to year until 1923 when the trustee named therein died. The defendant for five or six years regularly received her interest in the rents and profits on the basis of a 1/8 interest in the property.

After the death of the mother, Sarah A. Moore, in 1921, it became evident that the children could not

occupy the land as tenants in common. There was continued dissension, of which the defendant Anna L. Moore seemed to be the storm center. It was finally determined by some of the plaintiff heirs to purchase the interest of the defendant in the property. Negotiations were conducted for some time in an effort to reach an agreement as to the value of her estate in the land. Finally, in June, 1917, the defendant, in consideration of $5,124.50, by bargain and sale deed conveyed to the plaintiff, Garfield Moore, ''all of my undivided one-eighth interest in and to the following described lands (including property in question).'' Without doubt, the defendant, under her construction of the will and codicil, believed that she had only an undivided 1/8 interest. She fully intended to convey all of her interest in this property by the deed above mentioned. The attorney who represents the defendant in this proceeding prepared the deed and it is evident that, at the time of its execution, he was of the same opinion, as shown by the following portion of the record:

''Q. You have always had the impression without studying the matter that Mrs. Moore was the owner of an undivided one-eighth and Anna owned an undivided one-eighth interest in fee simple of the land? A. That was my understanding until I examined the statute.

''Q. That is up to the time of Nathaniel's death? A. Yes.

''Q. And the deed that was prepared by you January 28th, 1922, was executed with that in mind that Anna owned an undivided one-eighth of the ranch? A. That's right.''

Defendant frankly states that she did not learn until December, 1922, in a proceeding to contest the will of her mother, that she had any more than an undivided one-eighth interest.

1, 2. It is certain there was considerable doubt among the heirs as to their respective interests under the provisions of the will and codicil. The contract entered into in June, 1917, relative to distribution of rents and profits of the land was in the nature of a family settlement. While the agreement pertained to distribution of rents and profits, the settlement made was predicated on what the heirs considered their respective interests in the land to be. The parties were dealing on an equal basis and had the same means of knowing their rights under the will. The agreement was fair and equitable in its terms and was a commendable effort to terminate a long standing family dispute. A court of equity should, indeed, be reluctant to disturb a settlement of this kind: *Goodin* v. *Cornelius,* 101 Or. 422 (200 Pac. 915); *Wells* v. *Neff,* 14 Or. 66 (12 Pac. 84, 88); Pomeroy's Equity Jurisprudence (4 ed.), § 850; 12 C. J. 362. While the construction given the will by the interested parties is not controlling, it is persuasive on the court where it is just and equitable and has been acquiesced in for many years: 40 Cyc. 1427. In the instant proceeding we think the court is warranted in adopting the construction of the interested parties that the mother and her children were tenants in common of this property. The defendant was paid full value to convey what she then believed to be her entire interest in the land. There is no merit nor justice in her contention that she now has an outstanding interest.

The decree of the trial court that plaintiffs are the owners in fee of the land described in the complaint is affirmed.                AFFIRMED.   REHEARING DENIED.

MCBRIDE, BEAN and BROWN, JJ., concur.