Argued January 20, affirmed February 23, 1927.

# GUARANTY AND LOAN COMPANY *v.* FANNIE E. RUFF.

(253 Pac. 536.)

**Appeal and Error—Court's Ruling on Former Appeal is Law of Case.**

1. Ruling of court on former appeal is law of the case on subsequent appeal.

**Dower—Wife's Agreement With Husband's Grantee to Release Dower Did not Constitute Lien on Land.**

2. Instrument constituting agreement to release dower, made by wife and husband's grantee, *held* not to constitute lien on land for amount to be paid.

**Dower—Wife's Agreement to Release Dower and not to Make Husband's Grantee Party to Divorce Suit is not Vitiated by Subsequent Divorce.**

3. Agreement by which, in consideration of $3,000, wife released dower in land held by husband's grantee and agreed not to make him party to divorce suit, is not vitiated in any degree by subsequent divorce.

- - - - - - -

1. See 2 R. C. L. 223.
3. Separation agreement as affecting dower right, see note in 35 A. L. R. 1511.

Equity—Grantee, Having Notice of Grantor's Contract With Wife
  of Prior Grantor for Release of Dower, was not Entitled to
  have Cloud Removed from Title Without Doing Equity.

4.  Where grantee of realty contracted with wife of grantor
for release of her dower right for certain sum, subsequent grantee,
having notice of contract, who failed to see that payment was
made, *held* not entitled to have cloud removed from title, in suit
against wife under maxim that he who seeks equity must do
equity.

Quieting Title—Plaintiff's Grantor, Who Made Contract Constitut-
  ing Cloud on Title, is Proper but not Necessary Party in Suit
  to Remove It.

5.  In suit to remove cloud from title, plaintiff's grantor, who
made contract with defendant constituting cloud, is proper but
not necessary party.

Appeal and Error, 4 **C. J.**, p. 898, n. 86, p. 1093, n. 77.
Compromise and Settlement, 12 **C. J.**, p. 337, n. 6, p. 338, n. 7,
p. 339, n. 19.
Equity, 21 **C. J.**, p. 172, n. 13, p. 180, n. 89, p. 182, n. 98.
Quieting Title, 32 **Cyc.**, p. 1379, n. 82, p. 1382, n. 99 New.

From Hood River: FRED W. WILSON, Judge.

Department 1.

This is the second appeal in this case. The opinion
of this court on the first appeal herein is recorded in
108 Or. 442 (215 Pac. 501, 216 Pac. 1020). We refer
to that opinion, where the instrument which forms
the basis of the contentions in this case is set out in
full, for a statement of the facts. Pursuant to the
decree of this court, above, the defendant filed an
amended answer by permission of the Circuit Court.
In addition to the allegations of the original answer
the defendant sets out that the title to the land in-
volved was acquired with money contributed by de-
fendant and her former husband, G. C. Ruff, and that
the latter took the title thereto in trust for himself
and the defendant; that for a long time prior to
January 22, 1921, the defendant and her then hus-
band were separated, and the defendant was con-
templating a suit against her husband for a divorce,

alimony and for one third of the real property standing in the name of her said husband, all of which was well known to the said W. R. Kaser and the plaintiff; that January 21, 1921, the said W. R. Kaser secured a contract with the defendant for conveyance to him of defendant's dower interest in the land, for which said Kaser agreed to pay the defendant the sum of $3,000 with interest as alleged in the instrument referred to above and set out in full in the former opinion of this court; that in accordance with the said instrument the defendant executed her deed and deposited the same in escrow; that prior to the making of said deed by defendant, Kaser, without the knowledge of the defendant, had executed and delivered to the plaintiff a deed for all the land described in the complaint; that said deed was made subject to the inchoate dower rights of the defendant in the land therein described; that plaintiff, at the time of and prior to the negotiations between Kaser and defendant resulting in the execution of said instrument and said deed, was fully informed and well knew the condition of the title to said lands and of the interest of the defendant therein; that plaintiff also knew of the claim made by the defendant to said lands, of her intention to begin suit or action concerning the same, and as a part consideration of the purchase of said lands by it from the said W. R. Kaser required him to secure a deed from the defendant; that Kaser secured the deed to said lands for the sum of $3,000 with interest and secured the payment thereof by lien for that amount upon said lands; that for the purpose of assisting and enabling the said Kaser to secure the deed from defendant plaintiff concealed from defendant all knowledge of the deed it had theretofore received from the

said Kaser, although the plaintiff well knew that said Kaser was falsely representing to said defendant that he was still the owner of said lands; that Kaser intended to execute and deliver to the defendant a mortgage or lien upon said lands to secure the payment of $3,000 and interest as aforesaid; that after making said deed by the defendant in favor of said Kaser the latter, at the instance and request of plaintiff, executed and delivered to plaintiff a deed to said lands, and at the time of the delivery thereof the plaintiff was informed by the said Kaser and knew of the execution of said contract between Kaser and the defendant, and knew the contents of said contract; that the same was by Kaser executed for the purpose of creating a mortgage or lien upon said lands in favor of the defendant for the amount stated therein; that defendant had accepted and received the same as such mortgage or lien; that the plaintiff accepted the second deed from Kaser subject to defendant's lien or mortgage; that the second deed executed and delivered by Kaser to plaintiff was executed without the knowledge or consent of the defendant; that the defendant was induced to make her deed to said Kaser and forego asking for an interest in said lands in her suit for a divorce from her husband because of the representations of Kaser that the contract between defendant and Kaser hereinbefore referred to was a lien or mortgage, and but for such representations and belief defendant would not have accepted the same, all of which was well known to the plaintiff; that plaintiff ought to be estopped from alleging or claiming that the said contract was not a lien or mortgage and should be enjoined from conveying said lands. The prayer in

the amended complaint is for a decree declaring the contract between defendant and Kaser to be a mortgage or lien upon the land described therein for the sum of $3,000 and interest as therein provided and that the title of the plaintiff be subject to said lien; for an order of sale of said lands to satisfy the amount due on said mortgage or lien; for an injunction preventing the conveyance of said lands by plaintiff and for general relief. The reply put in issue the allegations of the amended answer and testimony was taken. The court found in accordance with the amended answer, declared the instrument heretofore referred to as a contract between the defendant and Kaser to be a lien for the sum of $3,000 with interest at the rate of 7 per cent per annum from January 22, 1921, on the land therein described, and directed the sale of the land as upon execution for the satisfaction of said sum. This appeal is taken from that decree.

AFFIRMED.

For appellant there was a brief over the names of *Mr. S. S. Johnson* and *Mr. T. B. Handley,* with an oral argument by *Mr. Handley.*

For respondent there was a brief over the name of *Messrs. Manning & Harvey,* with an oral argument by *Mr. John Manning.*

COSHOW, J.—1, 2. The ruling of this court on the former appeal is the law of the case in this appeal: *Reed* v. *Hollister,* 106 Or. 407 (212 Pac. 367); *Wallace* v. *Portland Ry., L. & P. Co.,* 103 Or. 68 (204 Pac. 147); *Askay* v. *Maloney,* 92 Or. 566 (179 Pac. 899). The instrument constituting the agreement between the defendant and Kaser did not constitute a lien

upon the land therein described. If the consideration to be paid Kaser by the plaintiff depends in any way upon the outcome of this suit, then by authority of the decision of this court on the former appeal the plaintiff is not entitled to relief. If the plaintiff is aiding Kaser to escape his obligations to the defendant as defined in the said agreement, then by the ruling of the former appeal herein the plaintiff is not entitled to recover.

For many years prior to the time the agreement between Kaser and defendant was executed defendant and her then husband had been living apart from each other. Defendant had been contemplating securing a divorce from her husband for some time. Kaser was an associate and friend of defendant's husband and to a very large extent acted as a go-between for them. Some time prior to January, 1921, Kaser had taken a deed from defendant's husband to the land involved in this controversy without the consent or knowledge of the defendant. When the defendant discovered said deed she charged Kaser with attempting to aid her husband to defraud her of her interest in that land and to prevent her from recovering alimony in her contemplated divorce proceedings. At the time the agreement was entered into the defendant had an inchoate dower in the land. Her dower interest was such an encumbrance upon the land as would prevent Kaser from disposing of it to advantage. During the negotiations between defendant and Kaser, he conveyed his interest in the land to the plaintiff subject to the dower of the defendant. She had no knowledge of that conveyance. The evidence clearly establishes that at the time the instrument between defendant and Kaser was executed the latter

represented to the former that there were no encumbrances against the land, except the mortgage in favor of the Hypotheek bank. This representation was clearly false because at that time the plaintiff held the deed from Kaser which was given, according to the testimony of both Potter, then president of plaintiff corporation, and Kaser, to secure to the plaintiff the payment of about $1,375. To Kaser's knowledge that deed was in effect a mortgage.

3. That the contract between defendant and Kaser was intended to secure to the defendant the payment of the sum of $3,000 for her interest in the land and her forbearance to make Kaser a party to her contemplated divorce suit cannot be questioned. Defendant remonstrated with Kaser when she learned of the transfer of her husband's interest to him as aforesaid. She then threatened to make Kaser a party to the divorce suit for the purpose of setting aside that deed in order that she might be able to secure an interest in the land and alimony from her delinquent husband. The $3,000 agreed to be paid to defendant by Kaser represented more than the consideration for the dower of the defendant. It also represented the consideration which Kaser agreed to pay for immunity from litigation between defendant and her husband which would have involved the land Kaser was anxious and attempting to sell. There was a valuable basis for the compromise and settlement which was represented by the contract between defendant and Kaser. That contract, having been based upon a good and valuable consideration, was not to any degree vitiated by the subsequent divorce which destroyed defendant's dower in the land involved. Indeed, the very purpose of the contract itself was to

secure defendant for the sum agreed to be paid by Kaser for defendant's dower and his immunity from a suit involving the title to land which he was desirous of selling: *Hirsch* v. *May*, 75 Or. 403, 407 (146 Pac. 831); *Roane* v. *Union Pac. Life Ins. Co.*, 67 Or. 264, 272 (135 Pac. 892); *Klussman* v. *Day*, 107 Or. 109 (213 Pac. 787, 214 Pac. 348); 12 C. J. 337, 339, §§ 33, 34.

Kaser testified that at the time he executed the contract with defendant he believed and understood that he was creating a lien upon the land involved herein. Referring to the agreement to pay defendant $3,000, he testified on cross-examination as follows:

"Q. You thought it was a fair instrument?
"A. I did.
"Q. You thought that this was giving Mrs. Ruff security on that land for $3,000, did you?
"A. I did."

Mr. James P. Stapleton, as attorney for said Kaser, drew the instrument and testified in behalf of the defendant that it was intended for a lien upon the land. Defendant also testified that she understood and was informed both by Mr. Stapleton and her attorney, Mr. Manning, that the instrument constituted a lien upon the land and prevented Kaser from selling the land without paying her the $3,000. Mr. Manning, also as a witness in behalf of the defendant, testified to the same effect.

Notwithstanding the instrument was intended to pledge the land as security for the payment of the sum of $3,000, Kaser, as a witness in behalf of the plaintiff, testified that when he discovered defendant had secured a divorce he considered her interest in the land had ceased and he therefore owed her nothing. Shortly after the divorce was granted to the defendant he conveyed the land absolutely to the

plaintiff, and soon thereafter this suit was begun to remove the cloud cast upon plaintiff's title by the contract between defendant and Kaser and the claims of defendant thereunder. Kaser obtained from defendant all the benefits growing from the contract with defendant. She, relying upon her supposed security and the promise of Kaser to pay said sum of $3,000, procured her divorce without attempting to recover either alimony or her interest in the lands sold by her husband without her consent or knowledge. It would be hard to conceive of anything more inequitable than to allow Kaser to retain the benefits of his agreement with defendant and repudiate his own promise to pay to her the sum of $3,000 with interest as agreed.

4. Plaintiff takes the position that the contract not being a lien upon the land defendant is not entitled to relief against it or the land either. The amended answer alleges that plaintiff had knowledge of all the relations between Kaser and defendant and of the contract entered into between them. The evidence abundantly supports this allegation. The amended answer also charges the plaintiff with aiding Kaser to defraud. The charge in the answer is as follows:

"The plaintiff at the time of and prior to the negotiations between W. R. Kaser and the defendant, was fully informed and well knew of the condition of the title to said lands and of the interest of the defendant therein, and the claim made by defendant to said lands as hereinbefore alleged and of her intention to begin suit or action concerning the same, and as a part consideration of the purchase of said lands by it from the said W. R. Kaser, induced and required the said W. R. Kaser to secure a deed from the defendant for all her interest in said lands for the sum of $3000.00 and interest as aforesaid, and to secure the

payment of the same by a lien for the said amount upon the whole of said lands, and for the purpose of assisting and enabling the said W. R. Kaser to procure a deed from the defendant as aforesaid, concealed from the defendant all knowledge of the deed it had received from the said W. R. Kaser, although it well knew said W. R. Kaser was falsely representing to the defendant that he was still the owner of said lands, and that the said W. R. Kaser was intending to execute and deliver to the defendant a mortgage or lien upon said lands to secure the payment of the sum of $3000.00 and interest as aforesaid.

"After the making of the said deed by the defendant to the said W. R. Kaser; the said W. R. Kaser, at the instance and request of the plaintiff, executed and delivered to the plaintiff a second deed to the said lands, and at the time of the delivery thereof the plaintiff was informed of and knew of the execution by the said W. R. Kaser of the contract, Exhibit 'A,' and of the contents thereof, and that the same was by W. R. Kaser executed for the purpose of creating a mortgage or lien upon said lands in favor of the defendant for the amount stated therein, and that the defendant had accepted and received the same as such mortgage or lien, and the plaintiff agreed to and with W. R. Kaser that it would and did accept a deed from him to the said lands, subject to the defendant's lien or mortgage as aforesaid."

The Circuit Court found in accordance with the allegations of the amended answer and also found:

"That at the time the plaintiff received the said second deed from said Kaser it entered into a secret understanding with the said Kaser which provided that the consideration to be paid the said Kaser thereafter was to be dependent upon the outcome of the present suit to quiet title; that the plaintiff has been and is now aiding the said Kaser to escape his said obligation to the defendant; that this suit was instituted for mutual benefit of plaintiff and said Kaser."

This court always gives serious consideration and much weight to the findings of fact made by the trial judge in equity cases for the reason stated in the numerous opinions heretofore rendered. This practice is especially applicable to the instant suit. The principal witness for the plaintiff was Mr. Potter, then president of the plaintiff corporation. The trial court stated during the examination of Mr. Potter that he had known the witness from early boyhood, had gone to school with him and knew him to be a very intelligent man. Independent of that and the other advantages that the trial judge has over this court in passing upon the evidence, we are of the opinion that the finding of the court, set out above, is in accordance with the preponderance of the evidence. The plaintiff does not come into equity with clean hands. The plaintiff has not done equity. "He who seeks equity must do equity." A court of equity will not lend its support to one who seeks to clinch an unconscionable transaction. Plaintiff gave Kaser an option at the time the second deed was delivered to it to repurchase the land for $12,000 within one year from that date. At that time Kaser was owing plaintiff approximately $7,685. Included in the items making up the $12,000 was the sum of $500 attorney's fee for prosecuting a suit to quiet plaintiff's title or to remove a cloud therefrom, according to the testimony of both Kaser and Potter, plaintiff's witnesses. The evidence clearly indicates a deliberate attempt on the part of Kaser to repudiate his promise to pay defendant $3,000. It also tends strongly to prove that plaintiff was actively helping Kaser to avoid that obligation. It also convinces us that this suit was instituted for the purpose of executing that

nefarious scheme. Plaintiff knew that Kaser had no right to sell and convey the land without paying defendant the amount he agreed to pay her. The transaction between plaintiff and Kaser has the earmarks of a deliberate attempt to swindle defendant. Equity will not lend its aid to further such a scheme: 1 Pomeroy, Equity (4 ed.), § 380. The decree of the court in effect impresses a lien upon the premises described in the complaint for the purpose of satisfying the sum of $3,000 with interest as provided in the contract between defendant and Kaser.

5. Plaintiff urges here that Kaser is not a party to this suit and for that reason the defendant should not be permitted to urge her contentions here. No relief is sought against Kaser. His interest in the land has been transferred to the plaintiff. He would have been a proper party but is not a necessary party. The decree is affirmed. 　　　　　　　　　　　AFFIRMED.

BURNETT, C. J., and McBRIDE and RAND, JJ., concur.